1  ARAVIND SWAMINATHAN (PRO HAC VICE)
   aswaminathan@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   401 Union Street, Suite 3300
3  Seattle, WA 98101
   Telephone:    +1 206 839 4300
4  Facsimile:    +1 206 839 4301

5  MARC R. SHAPIRO (PRO HAC VICE)
   mrshapiro@orrick.com
6  ORRICK, HERRINGTON & SUTCLIFFE LLP
   51 West 52nd Street
7  New York, NY 10019-6142
   Telephone:    +1 212 506 3546
8  Facsimile:    +1 212 506 5151

9  SARAH DAVIS (STATE BAR NO. 275145)
   sdavis@orrick.com
10 ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
11 405 Howard Street
   San Francisco, CA  94105-2669
12 Telephone:    +1 415 773 5700
   Facsimile:    +1 415 773 5759
13
   Attorneys for Defendant
14 Evolve Bank & Trust

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17

18
   YOTTA TECHNOLOGIES INC.,              Case No. 4:24 CV-06456-TLT
19
                    Plaintiff,           **EVOLVE BANK & TRUST'S NOTICE
20                                       OF MOTION AND MOTION TO
          v.                             DISMISS**
21
   EVOLVE BANCORP, INC. and EVOLVE       Date:       March 25, 2025
22 BANK & TRUST,                         Time:       2:00 p.m.
                                         Courtroom: 9, 19 Floor
23                Defendants.            Judge:      Hon. Trina L. Thompson
                                         Trial Date: TBD
24                                       Date Action Filed: Sept. 13, 2024

25

26

27

28
                                                 EVOLVE BANK & TRUST'S NOTICE OF
                                                 MOTION AND MOTION TO DISMISS
                                                          4:24 CV-06456-TLT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 2

II.   BACKGROUND ................................................................................................. 4

III.  LEGAL STANDARD .......................................................................................... 8

IV.   PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY
      BE GRANTED ................................................................................................... 9

    A.    New York Law Governs the Complaint.................................................... 9

    B.    Yotta Fails to State a Claim for Fraud ................................................... 11

    C.    Yotta Fails to State a Claim for Conspiracy to Commit Fraud ............... 17

    D.    Yotta Fails to State a Claim for Negligent Misrepresentation or Negligence....... 19

        1.    Both Claims Are Barred Under the Economic Loss Doctrine ................. 19

        2.    The Negligent Misrepresentation Claim Fails for the Additional
              Reason That Yotta Fails to Plead a Special Relationship Between It
              and Evolve ................................................................................. 21

    E.    There is No Such Action for Negligent Interference with Contract ..................... 22

    F.    Yotta Lacks Standing to Bring A UCL Claim ........................................ 22

    G.    Yotta Fails to State a Claim for Quasi-Contract/Unjust Enrichment Against
            Evolve Because It Fails to Allege It Conferred a Benefit on Evolve.................. 24

V.    CONCLUSION ................................................................................................. 25

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*380544 Canada, Inc. v. Aspen Tech. Inc.*,
5      633 F. Supp. 2d 15 (S.D.N.Y. 2009)............................................................................ 15, 18

6

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*
7      404 F.3d 566 (2d Cir. 2005)............................................................................................ 17

8

*Alvord & Swift v. Stewart M. Muller Constr. Co.*,
      385 N.E.2d 1238 (N.Y. 1978) .......................................................................................... 22

9

*Anschutz Corp. v. Merrill Lynch & Co.*,
10      785 F. Supp. 2d 799 (N.D. Cal. 2011) ............................................................................ 10

11

*Aquilina v. Certain Underwriters at Lloyd's*,
      407 F. Supp. 3d 978 (D. Haw. 2019) .............................................................................. 12

12

13

*Ashcroft v. Iqbal*,
      556 U.S. 662 (2009) ..................................................................................................... 8, 12

14

*Astroworks, Inc. v. Astroexhibit, Inc.*,
15      257 F. Supp. 2d 609 (S.D.N.Y. 2003) ............................................................................ 14

16

*Baker v. R.T. Vanderbilt Co.*,
      688 N.Y.S. 2d 726 (App. Div. 1999) .............................................................................. 17

17

18

*Bell Atl. Corp. v. Twombly*,
      550 U.S. 544 (2007) ......................................................................................................... 8

19

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
20      757 F.2d 523 (2d Cir. 1985).............................................................................................. 14

21

*Bibicheff v. Chase Bank USA, N.A.*,
      No. 2:17-cv-4679 (DRH)(AYS), 2018 WL 4636817 (E.D.N.Y. Sep. 26, 2018).................... 19

22

*Bishop v. Porter*,
23      No. 02 Civ. 9542, 2003 WL 21032011 (S.D.N.Y. May 8, 2003) .......................................... 22

24

*Black Radio Network, Inc. v. NYNEX Corp.*,
      No. 96 Civ. 4138 (DC), 2000 WL 64874 (S.D.N.Y. Jan. 25, 2000)..................................... 20

25

26

*Bounthon v. Procter & Gamble Co.*,
      No. 23-cv-00765-AMO, WL 4495501 (N.D. Cal. Oct. 15, 2024)........................................ 8

27

*Bravo v. Cnty. of San Diego*,
28      No. C 12-06460 JSW, 2014 WL 555195 (N.D. Cal. Feb. 10, 2014) ...................................... 8

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

*Brownstone Inv. Grp., LLC v. Levey*,
    468 F. Supp. 2d 654 (S.D.N.Y. 2007) ............................................................. 17, 18

*Burton v. Wells Fargo Bank, N.A.*,
    No. 23-CV-05520 (DG) (JAM), 2024 WL 3173898 (E.D.N.Y. June 26, 2024) ............. 11, 16

*In re Capacitors Antitrust Litig. (No. III)*,
    No. 17-md-02801-JD, 2020 WL 6462393 (N.D. Cal. Nov. 3, 2020) ..................................... 10

*Chanayil v. Gulati*,
    169 F.3d 168 (2d Cir. 1999) .............................................................................. 11

*Cohen v. Stevanovich*,
    722 F. Supp. 2d 416 (S.D.N.Y. 2010) ................................................................ 17, 18

*Conangelo v. Champion Petfoods USA, Inc.*,
    No. 6:18-CV-1228 (LEK/ML), 2020 WL 777462 (N.D.N.Y. Feb. 18, 2020)...................... 20

*Costanza Constr. Corp. v. City of Rochester*,
    523 N.Y.S.2d 707 (App. Div. 1987) ..................................................................... 22

*Davis v. Nadrich*,
    174 Cal. App. 4th 1 (2009)................................................................................. 22

*De Sole v. Knoedler Gallery, LLC*,
    974 F. Supp. 2d 274 (S.D.N.Y. 2013) ................................................................... 17

*Dobroshi v. Bank of Am., N.A.*,
    886 N.Y.S.2d 106 (App. Div. 2009) ..................................................................... 21

*Duchnik v. Tops Mkts., LLC*,
    No. 22-CV-399 (JLS) (HKS), 2023 WL 4827951 (W.D.N.Y. July 6, 2023) ...................... 20

*Edgar v. MITE Corp*,
    457 U.S. 624 (1982) ........................................................................................ 10

*Ehret v. Uber Techs., Inc.*,
    68 F. Supp. 3d 1121 (N.D. Cal. 2014) .............................................................. 22, 23

*E.J. Brooks Co. v. Cambridge Sec. Seals*,
    105 N.E.3d 301 (N.Y. 2018)............................................................................... 25

*In re Fannie Mae 2008 Sec. Litig.*,
    742 F. Supp. 2d 382 (S.D.N.Y. 2010) ................................................................... 15

*Feldman v. Byrne*,
    178 N.Y.S.3d 525 (App. Div. 2022) ..................................................................... 21

*Fitzgerald v. Field*,
    No. 99-civ-3406(RWS), 1999 WL 1021568 (S.D.N.Y. Nov. 9, 1999) .............................. 17

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

*Four Directions Air, Inc. v United States*,
   No. 5:06-cv-283, 2007 WL 2903942 (N.D.N.Y. Sept. 30, 2007)..........................................20

*Gabriel Capital, L.P. v. NatWest Finance, Inc.*,
   94 F. Supp. 2d 491 (S.D.N.Y. 2000)..........................................................................17

*Gargano v. Morey*,
   86 N.Y.S.3d 595 (App. Div. 2018).............................................................................24

*Gen-Probe, Inc. v. Amoco Corp.*,
   926 F. Supp. 948 (S.D. Cal. 1996)...............................................................................9

*Gilleo v. J.M. Smucker Co.*,
   No. 20-cv-02519 (PMH), 2021 WL 4341056 (S.D.N.Y. Sept. 23, 2021)...........................19

*Gonzales v. Planned Parenthood of L.A.*,
   759 F.3d 1112 (9th Cir. 2014)....................................................................................9

*Greater New York Auto. Dealers Ass'n v. Env't. Sys. Testing, Inc.*,
   211 F.R.D. 71 (E.D.N.Y. 2002)..................................................................................20

*Grove Press, Inc. v. Angleton*,
   649 F.2d 121 (2d Cir. 1981).......................................................................................17

*Guerra v. Williams*,
   No. ED CV 16-2603, 2017 WL 10544291 (C.D. Cal. Sep. 27, 2017).................................5

*Gustafson v. BAC Home Loans Servicing, LP*,
   No. SACV 11-915-JST, 2012 WL 4761733 (C.D. Cal. Apr. 12, 2012)...............................23

*Guzman v. Bridgepoint Educ., Inc.*,
   305 F.R.D. 594 (S.D. Cal. 2015)................................................................................10

*High Tides, LLC v. DeMichele*,
   931 N.Y.S.2d 377 (App. Div. 2011)............................................................................17

*Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*,
   No. C-09-5815, 2010 WL 3619884, aff'd, 487 F. App'x 362 (9th Cir. 2012)......................23

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
   907 N.E.2d 268 (N.Y. 2009)...............................................................................24, 25

*In re iPhone Application Litig.*,
   No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011).............................9

*JP Morgan Chase Bank v. Winnick*,
   350 F. Supp. 2d 393 (S.D.N.Y. 2004)..........................................................................21

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)...............................................................................9, 11

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018)....................................................................................... 8

*Kumandan v. Google LLC*,
   No. 19-cv-04286-BLF, 2022 WL 103551 (N.D. Cal. Jan. 11, 2022) ............................. 12, 14

*Labajo v. Best Buy Stores, L.P.*,
   478 F. Supp. 2d 523 (S.D.N.Y. 2007)............................................................................. 19

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
   940 F.2d 397 (9th Cir. 1991).......................................................................................... 12

*Land Mine Enters. v. Sylvester Builders, Inc.*,
   74 F.Supp.2d 401 (S.D.N.Y. 1999).................................................................................. 20

*Larsen v. Vizio, Inc.*,
   No. SACV 14-01865-CJC(JCGx), 2015 WL 13655757 (C.D. Cal. Apr. 21,
   2015) ............................................................................................................................... 10, 11

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
   244 F.R.D. 204 (S.D.N.Y. 2007) ..................................................................................... 21

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012)........................................................................................... 10

*Medtech Prods. Inc. v. Ranir, LLC*,
   596 F. Supp.2d 778 (S.D.N.Y. 2008)............................................................................... 18

*Mehedi v. View, Inc.*,
   No. 21-cv-06374-BLF, 2024 WL 3236706 (N.D. Cal. June 28, 2024) ......................... 5

*Mueller v. Michael Janssen Gallery PTE. Ltd.*,
   225 F. Supp. 3d 201 (S.D.N.Y. 2016).............................................................................. 25

*NCA Holding Corp. v. Ernestus*,
   No. 97 Civ. 1372, 1999 WL 672836 (S.D.N.Y. Aug. 27, 1999) .................................... 13

*Norwest Mortg., Inc. v. Super. Ct.*,
   72 Cal. App. 4th 214 (1999)............................................................................................ 24

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014)......................................................................................... 8

*Offor v. Mercy Med. Ctr.*,
   No. 2:15-cv-2219 (DRH) (SIL), 2021 WL 3909839 (E.D.N.Y. Sep. 1, 2021).............. 19

*Patton v. Cox*,
   276 F.3d 493 (9th Cir. 2002)........................................................................................... 9

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

*Pinnacle Oil Co. v. Triumph Okla. Ltd. P'shp.*,
    No. 93 Civ. 3434 (DC), 1997 WL 362224 (S.D.N.Y. June 27, 1997)....................................10

*Ramirez v. Baxter Credit Union*,
    No. 16-cv-03765-SI, 2017 WL 118859 (N.D. Cal. Jan. 12, 2017)..........................................5

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996)..............................................................................................14, 18

*Slayton v. Am. Express Co.*,
    604 F.3d 758 (2d Cir.2010).....................................................................................................15

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001).....................................................................................................5

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011)...................................................................................................8

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011) ....................................................................................................22, 23

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)...................................................................................................12

*Tidenberg v. Bidz.com, Inc.*,
    No. CV 08-5553 PSG, 2009 WL 605249 (C.D. Cal. Mar. 4, 2009) .......................................24

*In re Toyota Motor Corp.*,
    785 F.Supp. 2d 883 (C.D. Cal. 2011) .....................................................................................23

*In re Turnstone Sys. Sec. Litig.*,
    No. C 01-1256 SBA, 2003 U.S. Dist. LEXIS 26709, 73 (N.D. Cal. Feb. 4,
    2003) ........................................................................................................................................13

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003)..............................................................................................5, 9

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)...........................................................................................12, 15

*Villalpando v. Exel Direct Inc.*,
    No. 12-cv-04137 JCS, 2014 WL 1338297 (N.D. Cal. Mar. 28, 2014) ....................................9

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
    No. MDL 06-1770 MHP, 2007 WL 9753228 (N.D. Cal. Aug. 13, 2007)..............................23

*Wilson v. Frito-Lay N. Am. Inc.*,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) ..................................................................................23

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

*Woodard v. Labrada*,
    No. EDCV 16-189 JGB (SPx), 2021 WL 4499184, (C.D. Cal. Aug. 31, 2021)..................... 10

*Zagami v. Cellceutix Corp.*,
    2016 WL 3199531 (S.D.N.Y. June 8, 2016)........................................................................... 10

**Rules**

Fed. Rule Civ. Proc. 9(b) ..........................................................................................*passim*

Fed. Rule Civ. Proc. 8 ...............................................................................................*passim*

Fed. Rule Civ. Proc. 12(b)(6) ..........................................................................................2, 8

## NOTICE OF MOTION

**Please take notice** that on March 25, 2025 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9, 19th Floor, of the U.S. District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Evolve Bank & Trust ("Evolve") will move the Court to dismiss the Complaint for failure to state a claim.

This motion is based upon this notice of motion and motion, the memorandum of points and authorities in support that follows, Evolve's Request for Judicial Notice, the Declaration of Aravind Swaminathan, the Declaration of Hank Word, the proposed order filed concurrently herewith, all pleadings and papers on file in this action, the arguments of counsel, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing on this motion.

Dated: December 9, 2024

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: */s/ Aravind Swaminathan*
ARAVIND SWAMINATHAN
Attorney for Defendants
Evolve Bank & Trust

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Yotta Technologies Inc. ("Yotta") brings this action against Evolve Bank & Trust ("Evolve") and its bank holding company, Evolve Bancorp, Inc. ("Evolve Bancorp"), alleging that Evolve conspired with now-bankrupt technology provider Synapse Financial Technologies Inc. ("Synapse") to defraud Yotta and its customers.[1]  Yotta's suit is a transparent attempt to place Synapse's liability on Evolve because Synapse is shielded from suit pending bankruptcy.  That problem—that it is Synapse's conduct and not Evolve's that is at issue—infects every aspect of Yotta's claims, ultimately revealing itself in Yotta's own allegations and the documents upon which it relies, warranting dismissal of the claims under Rule 8, Rule 9(b) and Rule 12(b)(6).

Yotta is a financial technology company ("fintech") that purports to gamify savings—it markets itself via slogans like "Play Games.  Win Big."—through non-traditional savings accounts that offer customers (referred to as "end users") the opportunity to win "substantial prizes," instead of traditional interest.  But Yotta is not a bank.  And, so, to build its business, it needed to find a financial institution that could hold its end users' funds.  To facilitate this arrangement, Yotta turned to Synapse.  Synapse was another technology company that provided software, systems, and services connecting fintechs, including Yotta, to banks who could hold their end users' money.  Among those banks was Evolve.

Yotta does not have—and never had—any direct contractual relationship with Evolve.  Yotta's agreement with Synapse provided that Synapse—not Evolve—was the entity responsible for servicing Yotta's end user accounts.  The end users acknowledged as much in their Account Agreement, which provided that Evolve was directed to accept instructions from Synapse regarding end users' funds.  The Account Agreement also explained that end users' accounts could be sub-deposit accounts within a larger deposit account.  To that end, Synapse set up one or more accounts at Evolve for the benefit of end users ("FBO Accounts") that held all end user funds collectively.  Synapse was responsible for maintaining the accounting sub-deposit ledger, *i.e.*, maintaining

---

[1] Yotta does not make any specific allegations against Evolve Bancorp, which separately moves to dismiss for lack of jurisdiction and improper venue.

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

balance and transaction information, for all Yotta end user accounts, and both Yotta and Evolve relied upon Synapse to do so.  Stated otherwise, Synapse was charged with tracking particular end user account details within the large, omnibus FBO Accounts.

Unfortunately, Synapse filed bankruptcy in April 2024, inoculating it from litigation. Synapse then cut off access to critical banking information that Evolve needed to permit access to the funds in May 2024.  Because Synapse cut off access to this critical banking information, Evolve was forced to freeze all funds held by the bank while it performed a reconciliation, and subsequent events have revealed the sub-deposit accounting was inaccurate and mismanaged.  Despite that process, Yotta filed this action against Evolve under the guise of fraud, arguing that Evolve is to blame for Yotta's unnamed losses associated with Synapse's failure.

The central premise of Yotta's complaint is that because Synapse failed, Evolve committed fraud.  The conclusion does not flow from the premise and Rule 9(b) commands more.  In fact, Yotta does not come close to alleging fraud.  Instead, Yotta's claims rely on conclusory allegations that "Defendant" made vague representations (i) about Yotta end user account balances and transactions, (ii) about Evolve's organizational, compliance, and technical ability to safeguard user funds, and (iii) that Evolve's dispute with Synapse was a contractual dispute that would be resolved quickly.  (Compl. ¶ 112.)  But not only does Yotta fail to plead with the particularity required by Rule 9(b), Yotta fails to plead any facts that show *any* of the alleged representations were made by Evolve or were false, were made with the fraudulent intent, or caused any injury to Yotta.  Instead, Yotta cherry-picks quotes from Evolve's communications with Synapse and the Synapse bankruptcy court to support its claims and conveniently omits the rest of those documents because they show Evolve's good faith efforts to protect end users.  That is not allowed, and the Court can consider those documents in full under the doctrine of incorporation by reference.[2]

Further, while Yotta summarily contends that Evolve "conspired" with Synapse to "misappropriate" end user funds by charging certain fees to the FBO Accounts, those allegations cannot be squared with other allegations in the Complaint or underlying documents.  First, Yotta

---

[2] *See* Evolve's Request for Judicial Notice ("RJN") at 2-5, concurrently filed herewith.

admits that the end user ledger balances did **not** change as a result of the alleged misappropriation. That admission dictates the deduction of those fees is a reconciliation issue between Synapse and Evolve and had no effect on what end users are owed. Second, Yotta does not dispute that Synapse owed those fees to Evolve and/or a third-party service provider; it merely alleges that Evolve debited the incorrect Synapse account—at most, that's mistake, not fraud. Third, the allegations and the quoted breach letter demonstrate that Evolve took actions to ensure that Synapse replenished the challenged fees that were deducted from the FBO Account instead of the Fee Account. Among other things, Evolve required Synapse to increase the amount of funds in its reserve account—a separate account funded by Synapse that covers liability to the Bank and deficiencies in any FBO account—when it discovered the FBO accounts were insufficiently funded. And then Evolve took further action to transfer $35 million from that reserve account back into the FBO Accounts to reconcile *Synapse's* deficiencies, including from the challenged fees. These allegations show Evolve acted to protect end users from the Synapse fall out—not that it conspired with Synapse to defraud them or Yotta. Yotta simply does not allege any facts even suggesting fraud here.

Yotta's other claims fail too. Its negligence and negligent misrepresentation claims are barred by the economic loss doctrine, and, in any event, Yotta fails to plead a special relationship between it and Evolve that is required to state a such a claim. Yotta's negligent interference with contract claim fails because such a claim is not recognized under either California or New York law. Last, Yotta's UCL claim fails because it is black letter law that a UCL claim does not apply extraterritorially, and Yotta's unjust enrichment claim fails because it fails to plead any facts that show that it (as opposed to its end users) conferred any benefit on Evolve.

Accordingly, this Court should dismiss the Complaint in its entirety.

## II.    **BACKGROUND**

"Evolve was founded in 1925" and is an Arkansas state-chartered bank and member of the Federal Reserve System. (Compl. ¶ 29.) "Now based in Memphis, Evolve is a small, full-service consumer bank with over forty locations in ten states…." (*Id.*) In addition to its "traditional banking products" (*Id.* ¶ 30), Evolve has an "Open Banking" business which "uses technology like

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

1    APIs to offer nonfinancial and financial businesses a network of financial products like accounts

2    and transaction methods.  (*Id.* ¶ 31.)  "This means third-party providers are allowed access to

3    payment products so they can design and build new user experiences." (*Id.*)  While Evolve works

4    with third-party providers, it has "an obligation to always maintain compliance and security within

5    [its] system, including regular system audits." (*Id.* ¶ 33.)  Accordingly, the "Evolve Open Banking

6    team works diligently alongside partners and regulators to ensure that compliance standards are

7    met." (*Id.*)

8         Yotta is a fintech company that has its principal place of business in New York.[3]  (Compl.

9    ¶ 17).  Yotta marketed, among other things, a "Yotta Savings Account" wherein accountholders

10   would give "its customers the opportunity to win substantial prizes," i.e., gamble, instead of

11   receiving "traditional interest payments." (Compl. ¶ 25.)  Since "Yotta is not itself a bank," it

12   needed "a banking partner to serve as a custodian for customer accounts." (*Id.* ¶¶ 27, 34.)  Enter

13   Synapse.

14        Synapse was a technology provider that enabled fintechs to provide banking services to its

15   users.  (*See* Compl. ¶¶ 36-40).  Synapse fulfilled this service for Yotta.  (*Id.*)  On account of the

16   arrangement, via Synapse, Yotta's end users entered into individual account agreements with

17   Evolve ("Account Agreement"), which is a state chartered, and federally insured bank.[4]  (*See id.*

---

18   [3] While the Complaint also alleges on "information and belief" that its principal place of business
19   is *either* California or New York (Compl. ¶ 17), the Court need not accept the allegation regarding
     California because it is refuted by Yotta's own SEC filings, which are subject to judicial notice.
20   *See* RJN at 5; Swaminathan Decl., Ex. D (Yotta Technologies Inc. Securities and Exchange
     Commission Form D (dated 2021-02-11) listing New York, New York as Yotta's principal place of
21   business); *Guerra v. Williams*, No. ED CV 16-2603, 2017 WL 10544291, at *2 (C.D. Cal. Sep. 27,
22   2017) ("[A] court 'need not [ ] accept as true allegations that contradict matters properly subject to
     judicial notice or by exhibit.'") (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th
23   Cir. 2001)); *Mehedi v. View, Inc.*, No. 21-cv-06374-BLF, 2024 WL 3236706, at *5 (N.D. Cal. June
     28, 2024) (collecting cases finding SEC filings are subject to judicial notice)

24
25   [4] The Account Agreement is also properly considered under the doctrine of incorporation by
     reference.  A document may be incorporated by reference into a complaint "if the plaintiff refers
26   extensively to the document or the document forms the basis of the plaintiff's claim." *United States
     v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  The Complaint repeatedly references the Account
27   Agreement (and its allegations hinge on the obligations of end users to pay certain fees and the
     duties of Synapse and Evolve under the Account Agreement).  *See Ramirez v. Baxter Credit Union*,
28   No. 16-cv-03765-SI, 2017 WL 118859, at *1 n.1 (N.D. Cal. Jan. 12, 2017) (considering account
     agreement under the incorporation by reference doctrine).

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

1   ¶¶ 39-40; Declaration of Hank Word ("Word Decl."), Ex. A (Account Agreement).)  Yotta and

2   Evolve did not have a contractual relationship and the individual Yotta Account Agreements

3   expressly disclaimed such a relationship:

4       **2.8. Our Relationship with You.** This Agreement and the relationship between you and the Bank is
        that of debtor and creditor, and the Bank owes no fiduciary duty to you. **YOU UNDERSTAND**

5       **AND AGREE THAT THE PRODUCTS AND SERVICES OFFERED BY PLATFORM ARE NOT**
        **ENDORSED OR GUARANTEED BY BANK AND BANK ASSUMES NO LIABILITY FOR**

6       **PRODUCTS OR SERVICES PURCHASED OR OFFERED BY PLATFORM OR PLATFORM USERS**
        **OTHER THAN THE SERVICES PROVIDED IN THIS AGREEMENT.** You understand that

7       Platform and Bank are not partners, affiliates or joint venturers with each other. Nothing in this
        Agreement is intended to be read or understood as making Platform and Bank partners, affiliates

8       or joint venturers or impose any liability as such on either of them. Unless otherwise expressly
        stated in this Agreement, Platform has no authority to act or represent Bank in any way. Bank
        provides the services under this Agreement in part through one or more service providers that

9       Bank has engaged to render some or all of such services to you on Bank's behalf, including
        Synapse. You agree that Synapse and any other such service providers are third-party

10  Account Agreement § 2.8.

11       Synapse, not Evolve, was the primary servicer of the accounts.  (*See, e.g.,* Account

12  Agreement at 1 (stating Synapse was "responsible for carrying out some of [the] responsibilities

13  under [the Account] Agreement …including receiving notices from [accountholders], responding

14  to any notices relating to questions or complaints concerning [the Account, and carrying out other

15  responsibilities[.]"); *see also* Compl. ¶ 40.)  Instead of setting up individual accounts at Evolve for

16  each Yotta end user, Synapse set up "one or more accounts for the benefit of ("FBO") end users"

17  at Evolve and created "sub-deposit accounts," which it was permitted to do, for each end user

18  account.[5]  (Compl. ¶ 41.)  Synapse was responsible for maintaining the ledger (i.e., keeping track

19  of transactions and balances) for the individual Yotta end users' sub-deposit accounts.  (*Id.* ¶¶ 40-

20  41.)  As part of the arrangement between Synapse and Evolve, Synapse was required to fund a

21  reserve account, which held Synapse's own funds (i.e., not end user funds) to cover, among other

22  things, any subsequent deficiencies in the FBO accounts and liabilities to Evolve.  (*See id.* ¶¶ 76-

23  78.)  Synapse was also responsible for paying Evolve for the banking services Evolve rendered to

24  Synapse and the fintech platforms with which it worked, including Yotta, i.e., "Account Analysis

25  Charges."  (*See id.* ¶¶ 71-72)

26  _____

27  [5] The Account Agreement informed accountholders that their accounts may be set up that way.
    (Account Agreement at 1 ("[T]he term 'Account' may also collectively include Sub-Deposit

28  Accounts of such Account[.]"); *see also id.* § 7.2 Sub-Deposit Accounts; Bank Deposit Custodial
    Program.)

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

In April 2024, Synapse filed for bankruptcy and "[o]n or about May 11, 2024" Synapse "turn[ed] off system access for Evolve," which provided current information regarding end user transactions and account history. (*Id.* ¶¶ 88, 90.) As result, "[o]n or about May 11, 2024," Evolve suspended activity for all Yotta accounts "to maintain the integrity and security of end user accounts" while it investigated the system access issue and performed a reconciliation, which it is explicitly permitted to do under the Account Agreement. (*Id.*; Account Agreement § 2.13 ("You agree that if the Bank suspects that any irregular unauthorized, or unlawful activity may be occurring in connection with your Account, Bank may 'freeze' . . . the balance in such Account pending investigation of such Activities.") In the Synapse bankruptcy, "the trustee report[ed] a 'shortfall' totaling tens of millions of dollars." (Compl. ¶ 9.)

On September 13, 2024, Yotta filed the current action repeatedly alleging conduct by "Evolve and Synapse"—without differentiating which one did what—that resulted in depriving Yotta end users of their funds. (Compl. ¶ 10.) With respect to Evolve, Yotta alleges that it improperly deducted "Account Analysis Charges" and TabaPay fees (fees charged by a third-party service provider that processed payments) from the FBO account(s) rather than Synapse's "Evolve Fees" account. (*See id.* ¶¶ 71, 74-75.) Yotta admits the deduction of these fees from the FBO account did not affect the balances of the end user accounts. (*See, e.g., id.* ¶ 68 ("Evolve and Synapse …continued to report account transactions and balance info[.]").) Yotta does not allege (nor can it) that Evolve was not entitled to these fees under its agreement with Synapse; instead, Yotta alleges they were deducted from the wrong account. (*See, e.g., id.* ¶ 75 (alleging TabaPay fees should have been paid out of Synapse's Evolve Fees account).) Yotta challenges $5,186,152.06 in Account Analysis Fees and $13,000,000 in TabaPay fees for a total of $18,186,152.06 deducted from the FBO account(s). (*See id.* ¶¶ 71-75.) But Yotta admits that Evolve transferred over $35,000,000—significantly more than the amount challenged—from the reserve account to the FBO account(s) to cover Synapse's deficiencies (including amounts owed to Evolve that were allegedly deducted from the FBO accounts instead of the Evolve Fees account and other deficiencies created by Synapse). (*See id.* ¶¶ 71, 74-78; Swaminathan Decl., Ex. C at 4-

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

5.)[6]

Yotta also alleges that Evolve committed "fraud" when it represented that: (i) "Evolve had the organizational and technical ability to safeguard user funds[;]" (ii) Evolve made representations about transactions and balance information, and (iii) Evolve informed Yotta that interest payments were suspended due to contractual issue with Synapse.  (Compl. ¶ 112.)

Yotta asserts claims for fraud, conspiracy to commit fraud, negligent misrepresentation, negligent interference with contract, negligence, violation of California's Unfair Competition Law, and restitution based on quasi-contract/unjust enrichment.  (*Id*. ¶¶ 110-172.)

### III.    **LEGAL STANDARD**

A motion to dismiss under Rule 8 is decided solely on the face of the complaint.  A complaint survives such a motion only if it provides each "defendant[] fair notice of the claims against [it]."  *Bravo v. Cnty. of San Diego*, No. C 12-06460 JSW, 2014 WL 555195, at *2 (N.D. Cal. Feb. 10, 2014).  "[L]umping together multiple defendants in one broad allegation fails to satisfy [this] notice requirement."  *Id.*

A district court must dismiss a complaint under Rule 12(b)(6) for failure to state a claim where the plaintiff fails to set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must accept "well-pleaded factual allegations" as true but need not "accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 664, 678.  *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may

---

[6] This Court can consider the entire bankruptcy submission under the incorporation by reference doctrine.  *See* RJN at 2-5.  As explained in the concurrently filed RJN, "[i]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken — or doom — their claims."  *Bounthon v. Procter & Gamble Co.*, No. 23-cv-00765-AMO, WL 4495501, at *5 (N.D. Cal. Oct. 15, 2024) (quoting *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1002 (9th Cir. 2018).).  Here, Yotta selectively quotes from Evolve's filing in the Synapse bankruptcy proceedings, so it is properly considered under the doctrine.  (*See, e.g.* Compl. ¶¶77-78.)  Once a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss, and both parties—and the Court—are free to refer to any of its contents."  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) (citations omitted).

not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). "A court may…consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The court is permitted to consider such documents so long as their authenticity is not contested, and the complaint relies on them. *Id.* "Although [the court] normally treat[s] all of a plaintiff's factual allegations in a complaint as true, [it] 'need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'" *Gonzales v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citation omitted).

Where, like here, the Complaint's claims are predicated on alleged fraud, they are also subject to the heightened pleading standard of Fed. Rule Civ. Proc. 9(b), which requires plaintiffs to allege the "who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks and citation omitted).

Finally, a complaint that lumps multiple defendants together in broad allegations falls short of providing the necessary notice under Rule 8(a)(2) and Rule 9(b) and should be dismissed. *See Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 961 (S.D. Cal.1996). The "failure to allege what role each [d]efendant played in the alleged harm makes it exceedingly difficult, if not impossible, for individual [d]efendants to respond to [p]laintiffs' allegations." *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011) (Koh, J.). Put another way, a plaintiff's allegations must "provide sufficient notice to all of the [d]efendants as to the nature of the claims being asserted against them," including "what conduct is at issue." *Villalpando v. Exel Direct Inc.*, No. 12-cv-04137 JCS, 2014 WL 1338297, at *5 (N.D. Cal. Mar. 28, 2014).

## IV.    PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A.    New York Law Governs the Complaint

In determining what law to apply, California courts employ a three-step governmental

1    interest test.[7]  "First, the Court determines whether the relevant laws are the same or different;

2    [second,] if there is a difference, the Court examines each jurisdiction's interest in the application

3    of its own law 'under the circumstances of the particular case to determine whether a true conflict

4    exists'; and [third,] if there is a true conflict, then the Court compares the nature and strength of

5    each jurisdiction's interest and 'applies the law of the state whose interest would be more impaired

6    if its law were not applied.'"  *In re Capacitors Antitrust Litig. (No. III)*, No. 17-md-02801-JD, 2020

7    WL 6462393, at *6 (N.D. Cal. Nov. 3, 2020) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d

8    581, 590 (9th Cir. 2012)).

9        Multiple courts have recognized that California and New York are different with respect to

10   negligent misrepresentation and unfair competition claims.  *See, e.g.*, *Woodard v. Labrada*, No.

11   EDCV 16-189 JGB (SPx), 2021 WL 4499184, at *17 (C.D. Cal. Aug. 31, 2021) (holding that there

12   are material differences between New York and California negligent misrepresentation law);

13   *Anschutz Corp. v. Merrill Lynch & Co.*, 785 F. Supp. 2d 799, 822 (N.D. Cal. 2011) (same); *Mazza*,

14   666 F.3d at 591 (holding there are material differences between California's UCL and New York

15   consumer protection statute).

16       The second and third steps likewise favor New York.  California recognizes that "the place

17   of wrong has the predominant interest" in seeing their law applied."  *Larsen v. Vizio, Inc.,* No.

18   SACV 14-01865-CJC(JCGx), 2015 WL 13655757, at *3 (C.D. Cal. Apr. 21, 2015) (quoting *Edgar*,

19   457 U.S. at 644).  That is consistent with the Ninth Circuit's recognition that "California's interest

20   in applying its law to residents of foreign states is attenuated."  *Mazza*, 666 F.3d at 594 (citing

21   *Edgar v. MITE Corp*, 457 U.S. 624, 644 (1982)).  Here, all of Yotta's claims hinge on alleged

22   misrepresentations or omission by Evolve to Yotta, a Delaware Company with its principal place

23   of business in New York.  *See supra* at 5 & n.3; *see, e.g.*, Compl. ¶¶ 112, 123, 130, 147, 154, 162,

24   169.  Courts in California and New York routinely recognize that misrepresentation claims arise

25   where the communication was received.  *See Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594,

26   616-17 (S.D. Cal. 2015) (allegedly fraudulent communications made by long-distance call occurred

27

28

---

[7]  "When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law."  *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002).

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

where misrepresentation was heard, not where it originated); *Zagami v. Cellceutix Corp.*, 2016 WL 3199531, at *4 (S.D.N.Y. June 8, 2016) (holding misrepresentations "occur…[in] districts in which they are received.") (collecting cases); *c.f. Pinnacle Oil Co. v. Triumph Okla. Ltd. P'shp.*, No. 93 Civ. 3434 (DC), 1997 WL 362224 at *1 (S.D.N.Y. June 27, 1997) ("Under New York conflicts of law principles, fraud claims are governed by the laws of the jurisdiction where the injury is deemed to have occurred—which usually is where the plaintiff is located.").

Yotta does not contend that any of the alleged misrepresentations pled in the Complaint were received in, or disseminated from, California.  (*See* Compl. ¶ 112.)  The only allegations purporting to link this action to California are that "Evolve planned and carried out its fraudulent scheme in California," and the identification of several meetings between Evolves executives and "Synapse" from 2018 to 2022 that Yotta contends "upon information and belief" were for the purpose "to plan and carry out Evolve and Synapse's fraudulent scheme."  (*Id.* ¶ 87.)  Nor does the Complaint allege that either Yotta's Chief Executive Officer, Adam Moelis, or its former Head of Risk Strategy, Sidhant Bahl—both of whom allegedly directly received misrepresentations from Evolve (*see, e.g.*, Compl. ¶¶ 42-49) reside in California and, indeed, at least Mr. Moelis resides in New York.  (Swaminathan Decl., Ex. D at 2 (listing address for Mr. Moelis in New York, New York.)

Given Yotta's admission that it has no physical presence in California (*see* Compl. ¶ 17 (alleging it has a "virtual office" in California)) and that its principal place of business is in New York, under California law, the purported "place of the wrong" is New York.  *See Larsen*, 2015 WL 13655757, at *9 ("California considers the geographic location of the omission or where the misrepresentations were communicated to the consumer as the place of the wrong.").  Thus, California choice-of-law rules dictate that New York law will govern this action.

### B.  <u>Yotta Fails to State a Claim for Fraud</u>

"Under New York law, the elements of common law fraud are a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." *Burton v. Wells Fargo Bank, N.A.*, No. 23-CV-05520 (DG) (JAM), 2024 WL 3173898, at *13 (E.D.N.Y. June 26, 2024) (quoting *Chanayil v. Gulati*, 169 F.3d 168, 171 (2d

Cir. 1999)).  The allegations of fraud must comply with Federal Rule of Civil Procedure 9(b) and be pled with particularity.  *See* Fed. R. Civ. Proc. 9(b).  Specifically, the complaint must include be "the who, what, when, where, and how of the misconduct charged."  *Kearns*, 567 F.3d at 1124 (internal quotation marks and citation omitted).  The allegations "must set forth what is false or misleading about a statement, and why it is false."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Moreover, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'requires plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'"  *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (citation omitted).  A complaint governed by Rule 9(b) must "detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme."  *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).

While intent can be averred generally, "[p]leading scienter, including intent to defraud, requires more than 'conclusory . . . allegations' and 'bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements.'"  *Kumandan v. Google LLC*, No. 19-cv-04286-BLF, 2022 WL 103551, at *11 (N.D. Cal. Jan. 11, 2022) (quoting *Iqbal*, 556 U.S. at 680-81).

Though the Complaint is long on allegations concerning Synapse's failings, it is short on allegations against Evolve.  Yotta attempts to get around the fact that much of its Complaint is about Synapse by impermissibly engaging in group pleading.  Indeed, the Complaint repeatedly treats Evolve and Synapse the same by alleging conduct by "Evolve and Synapse," together, without any specificity as to what Evolve did, as opposed to what Synapse—a non-party who is immune from suit given it is in bankruptcy proceedings—did.  (*See, e.g.*, Compl. ¶ 11 ("Synapse and Evolve purported to report all transactions involving customer funds"); *id.* ¶ 12 ("Evolve and Synapse also misappropriated almost $50 million in customer money"); *id.* ¶ 55 ("Evolve and Synapse represented that all of the transactions involving end user funds that Evolve was processing and customer account balances were being accurately reported to Yotta.").)  Such group pleading— without specifying who did what—violates not only Rule 9(b), but also Rule 8.  *Aquilina v. Certain Underwriters at Lloyd's*, 407 F. Supp. 3d 978, 996–97 (D. Haw. 2019) (finding lumping defendants

1    together without explaining their specific roles violated *both* Rule 8(a) and 9(b)).

2        These are more than just technical violations.  They are carefully crafted allegations to (a)

3    avoid the reality that Evolve—as Yotta admits—was merely responsible for providing banking

4    services, whereas Synapse was responsible for the reporting of these transactions and balances to

5    Yotta end users; and (b) maintain a suit against Evolve because Synapse is immune from suit

6    because it is in bankruptcy.

7        Yotta's fraud claim boils down to three categories of alleged misrepresentations: (i)

8    representations about Yotta end user account balances and transactions, (ii) representations that

9    Evolve had the organizational, compliance, and technical ability to safeguard user funds, and (iii)

10   representations that Evolve's dispute with Synapse was a contractual dispute that would be resolved

11   quickly.  (Compl. ¶ 112.)  Yotta fails to plead any category with the requisite particularity.

12       ***Account Balance Representations.***  Yotta's allegations concerning Evolve's alleged

13   account balance and transaction misrepresentations lack specificity and are inconsistent with other

14   pled allegations that show Synapse, not Evolve, was responsible for maintaining records of the

15   Yotta end user account balances.  Specifically, Yotta summarily alleges that it received

16   "[e]ssentially continuous representations, from 2020 to May 11, 2024" that "each and every

17   transaction" and "real-time" account balances was being reported to Yotta users.  (Compl. ¶ 112.)

18   But Yotta does not allege who at Evolve made these representations, to whom they were made, or

19   how they were false or fraudulent.  That is plainly insufficient under Rule 9(b).  "Simply alleging,

20   in conclusory terms, that the statements are false, without demonstrating why is insufficient."  *NCA*

21   *Holding Corp. v. Ernestus*, No. 97 Civ. 1372, 1999 WL 672836, at *3 (S.D.N.Y. Aug. 27, 1999).

22       The absence of these vital allegations is no trifling oversight.  Yotta's own allegations

23   demonstrate that (i) *Synapse* (not Evolve) was the entity responsible for synthesizing and reporting

24   Yotta end user transactions and balances, and (ii) Evolve did not even have all the necessary

25   information to maintain the individual account ledger.  (Compl. ¶ 40 ("Evolve ***delivered a***

26   ***continuous data stream to California-based Synapse*** that was supposed to more-or-less

27   instantaneously report on a customer-level any and all transactions that it effected. . . .  Synapse

28   combined Evolve's data stream with its own customer transaction data and deliver[ed] the

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

1    combined data to Yotta and customers.")  In other words, Evolve delivered data to Synapse, which

2    was then responsible for delivering customer transactions and balances to Yotta end users.  Yotta's

3    admission[8] that Synapse—not Evolve—was responsible for maintaining and reporting account

4    balance and transaction information to Yotta shows that Yotta cannot satisfy the requirements of

5    Rule 9(b), much less plead that the supposed, non-specific representations are not false.  Any fraud

6    allegations premised thereon must be dismissed.[9]

7           ***Organizational, Compliance, and Technical Abilities.***  Plaintiff's allegations concerning

8    Evolve's organizational, compliance, and technical ability misrepresentations also fail to satisfy

9    Rule 9(b) for a myriad of reasons.  The allegations revolve around an email allegedly delivered on

10   September 24, 2020 in which Evolve stated it "'[e]nsures clients meet regulatory, compliance and

11   risk mitigation requirements for all solutions,' that Evolve 'enforce[s] federally mandated

12   regulations,' and that its technology team '[t]ediously test[s] and analyze[s] solutions before going

13   live.'"  (Compl. ¶¶ 112, 130.)  As an initial matter, Yotta fails to identify the sender or recipient of

14   the email or provide the email's full context.  Moreover, Yotta fails to plead any facts that show

15   Evolve's representations about its oversight and its enforcement of compliance with federally

16   mandated regulations to be false when made or otherwise.  *See San Leandro Emergency Med. Grp.*

17   *Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir. 1996) (affirming dismissal of

18   fraud claim where plaintiffs "allege[d] no circumstances to support their allegation that the

19   allegedly false statements, made at least three weeks before the [challenged] figure was announced,

20   were false at the time made."); *see also Kumandan*, 2022 WL 103551, at *11 (granting motion to

---

[8] While Yotta can plead alternative claims, plaintiffs are not permitted to plead inconsistent facts. *In re Turnstone Sys. Sec. Litig.*, No. C 01-1256 SBA, 2003 U.S. Dist. LEXIS 26709, at *73-74 (N.D. Cal. Feb. 4, 2003) ("Of course, while Plaintiff may allege claims that are inconsistent with one another, Plaintiff may not allege inconsistent facts."); *see also Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 615 n.10 (S.D.N.Y. 2003) ("A complaint may not allege inconsistent facts -- e.g., whether there was an agreement -- because facts are binding judicial admissions." (citing *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985))).

[9] Yotta's fraud claim premised on account balance reporting despite the FBO account deficiency should be dismissed for the additional reason that the FBO account deficiency does not show that the account balances were false.  Yotta admits that funds were not deducted from the sub-deposit account ledger kept by Synapse as a result of the deficiency.  (*See* Compl. ¶ 68 ("Evolve and Synapse…continue to report account transaction and balance info").)  Stated differently, the Complaint does not allege that a deficiency in the FBO account changed the amount held by Yotta end users or how the reporting on end user transactions were false.

dismiss for failure to show falsity where plaintiffs did not plead facts showing defendant's "knowledge in 2018 and 2019 that a software bug would occur in 2020"). Yotta relies solely on a June 14, 2024 consent decree—entered over four years after the alleged representation—to plead that those representations are false and made with fraudulent intent. (Compl. ¶¶ 99-100.) That contention, however, cannot be squared with the Consent Decree itself. *See* Cease and Desist Order Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, *In the Matter of Evolve Bancorp, et al.*, No. 24-0212-B-HC & 24-012-B-SM (June 14, 2014) ("Consent Decree"), https://www.federalreserve.gov/newsevents/pressreleases/files/enf20240614a1.pdf.    As a basic matter, Yotta acknowledges why the Consent Decree cannot meet the requirements of Rule 9(b): because "the specific nature of the deficiencies uncovered by the regulators is not identified." (Compl. ¶100.) That in and of itself is fatal, as it fails the basic requirement that plaintiff plead what is false about the statement. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Further, to the extent Yotta endeavors to use the Consent Decree as evidence that Evolve knowingly made false representations pertaining to its regulatory compliance, that contention is chronologically flawed. Yotta states that the first time Evolve's regulators raised concerns was in an August 2023 report of examination. (Consent Decree at 2; *see also* Compl. ¶ 99.). Yet, all of the alleged misrepresentations regarding compliance in the Complaint pre-date August 2023, which means the Consent Decree—the only evidence purporting to support falsity—cannot raise any inference of scienter because it came *after* the statements identified in the Complaint. *See 380544 Canada, Inc. v. Aspen Tech. Inc.*, 633 F. Supp. 2d 15, 35 (S.D.N.Y. 2009) (holding that emails that post-dated the alleged misrepresentation "fail to create a strong inference of [defendant's] scienter"). The allegations regarding Scot Lenoir's representations that "Evolve had the organizational and technical ability to safeguard user funds" likewise predate the period Evolve allegedly received feedback from its regulators that its procedures and policies could be enhanced, and thus fail for the same reasons. (Compl. ¶ 112 (noting last alleged misrepresentation on December 7, 2022).) The allegations regarding representations at bi-weekly compliance check in meetings from late 2022 to *early* 2023 likewise fail for the same reasons *and* lack particularity.

(*Id.*)  Indeed, even taken together, these allegations are little more than an attempt to plead fraud by hindsight, which is not actionable.  *c.f. In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 409 (S.D.N.Y. 2010) (holding allegations of "fraud by hindsight…[are] insufficient to withstand a motion to dismiss.") (citing *Slayton v. Am. Express Co.*, 604 F.3d 758, 776 (2d Cir.2010)).  Indeed, while the Consent Decree identifies areas for improvement, it acknowledges the Bank's good faith. *See* Consent Decree at 3 ("WHEREAS, it is the *common goal* of Bancorp, the Bank, the Board of Governors, and the ASBD that Bancorp and the Bank comply with all federal and state laws, regulations and rules[.]") (emphasis added).

  **Contractual Dispute.**  Nor do Evolve's alleged misrepresentations regarding either the contractual dispute with Synapse, or Evolve's intentions to protect end users in connection therewith, state a claim for fraud because Yotta fails to plead facts showing that those statements were false, that they were intended to defraud, or that they caused any damages.  To start, Yotta admits that Synapse and Evolve had a contractual dispute regarding Synapse's failure to ensure "that the balance in each FBO account equals 100% of the amount of funds Deposited by end Users in connection with such FBO account." (Compl. ¶ 67.)  Yotta's admission that Evolve had a contractual dispute with Synapse regarding funding of the account balances precludes any finding of falsity and by itself precludes a fraud claim premised thereon.  *See Burton*, 2024 WL 3173898, at *13 (holding conclusory allegations of falsity are insufficient to state a fraud claim).

  As to the allegations that Evolve misrepresented that it was acting to protect the end users, those allegations hinge on selective and misleading quotes.  In fact, the underlying cited documents show the opposite of Plaintiff's cherry-picked quotes.  For example, Yotta alleges that Evolve's statements to the bankruptcy court show that Evolve paid itself on two separate occasions ($5,401,777.28 and $2,500,000) from the reserve account "rather than return the funds improperly taken from end users." (Compl. ¶ 77.)  But Yotta conveniently omits and/or obfuscates that the same cited statement shows *in addition* Evolve transferred $35,322,630.78 from the reserve account *into the FBO account* to cover the deficiencies Evolve was able to identify.  (Swaminathan Decl., Ex. C at 5.)  Yotta also only strategically quotes from the September 25, 2023 breach letter and again omits the portions that show that Evolve acted swiftly to protect end users by increasing the

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

amount required in the reserve account and sweeping funds contractually owed to Synapse from Evolve for the benefit of end users.  (Swaminathan Decl., Ex. B.)  Nor does Yotta plead any facts that could support its contention that Evolve was trying to defraud Yotta by communicating that it was having a contractual dispute with Synapse or that any damages occurred as a result of that communication.  To the contrary, the allegations and underlying documents show that the alleged harms (i.e., Synapse's failure to fully fund the FBO accounts) had already occurred prior to the alleged representations and that Evolve was actively working to mitigate Synapse's actions.  (*See* Compl. ¶ 67; Swaminathan Decl.., Exs. B-C); *see also High Tides, LLC v. DeMichele*, 931 N.Y.S.2d 377, 381 (App. Div. 2011) (holding "alleged misrepresentations and omissions may not form the basis for the plaintiff's fraud claims to the extent that they were made after any such investment, since the element of reliance is necessarily absent.")

Accordingly, Yotta's fraud claim against Evolve should be dismissed.

### C.    Yotta Fails to State a Claim for Conspiracy to Commit Fraud.

A claim of conspiracy lies only "where an underlying tort of fraud has been adequately pleaded." *Brownstone Inv. Grp., LLC v. Levey*, 468 F. Supp. 2d 654, 660 (S.D.N.Y. 2007) (citing *Baker v. R.T. Vanderbilt Co.*, 688 N.Y.S. 2d 726,729 (App. Div. 1999); *see also Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 437 (S.D.N.Y. 2010) ("Because [p]laintiffs have not state a claim for fraud, their conspiracy claim also fails as a matter of law.").  In addition to showing an adequately pled fraud claim, "a claim of civil conspiracy requires (i) an agreement between the conspirator and the wrongdoer and (ii) a wrongful act committed in furtherance of the conspiracy." *Gabriel Capital, L.P. v. NatWest Finance, Inc.*, 94 F. Supp. 2d 491, 511 (S.D.N.Y. 2000) (internal quotation marks and citation omitted).  Moreover, "to survive a motion to dismiss, a complaint must contain more than general allegations in support of the conspiracy.  Rather, it must allege the specific times, facts, and circumstances of the alleged conspiracy." *Fitzgerald v. Field*, No. 99-civ-3406(RWS), 1999 WL 1021568, *4 (S.D.N.Y. Nov. 9, 1999) (internal citation omitted).  "Accordingly, a bare conclusory allegation of conspiracy does not state a cause of action." *Brownstone Inv. Grp*, 468 F. Supp. 2d at 661 (quoting *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981)).  None of Yotta's conclusory allegations suffice.

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

First, any conspiracy claim predicated on the misrepresentation allegations above fail for the same reasons as the underlying fraud claims.  It should also be dismissed as impermissibly duplicative.  *See De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 315 (S.D.N.Y. 2013) ("The Second Circuit has made clear that 'a plaintiff may not reallege a tort asserted elsewhere in the complaint in the guise of a separate conspiracy claim.'") (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.* 404 F.3d 566, 591 (2d Cir. 2005)); *380544 Canada, Inc.*, 633 F. Supp. 2d at 36 (dismissing conspiracy claim where the count "offer[d] no new allegations beyond those alleged in support of [p]laintiff's common law fraud claim").

Second, Yotta cannot attribute Synapse's alleged misappropriation of funds to Evolve under the guise of a conspiracy claim.  That is because the only allegations supporting the existence of an agreement to conspire are conclusory or made upon information and belief.  (Compl. ¶ 10 ("Yotta's investigation indicates that Evolve and Synapse conspired to simply take it…"); ¶ 87 ("Upon information and belief, the purpose of these meeting and other meetings that Evolve attended in California was to plan and carry out Evolve and Synapse's fraudulent scheme); ¶ 122 ("Evolve and Synapse conspired and agreed to commit fraud").  None suffice.  *See Brownstone Inv. Grp*, 468 F. Supp. 2d at 661 (allegation that defendants "acted in conspiracy to deprive [plaintiff] of his ownership interest" was conclusory and insufficient to show the parties entered into an agreement); *Cohen*, 722 F. Supp. 2d at 437 (dismissing conspiracy to commit fraud claim finding that general and conclusory allegations that defendants "entered into a scheme to manipulate the price" of stock were insufficient to establish an agreement); *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp.2d 778, 795 (S.D.N.Y. 2008) (allegation that "[u]pon information and belief, [defendants] conspired, agreed, and planned to use [plaintiff's] confidential and proprietary information" conclusory and insufficient "to make the allegation plausible").

Finally, to the extent the conspiracy claim (or standalone fraud claim) could be construed as predicated on Evolve's alleged misappropriation of funds when it collected its Account Analysis and TabaPay fees, that claim cannot be squared with the more specific allegations the Complaint.[10]

---

[10] The Complaint's allegations about the Mercury transfer are vague and do not explain how or why Yotta believes that "Mercury and/or its users" received "almost $50 million more than they were entitled to."  (Compl. ¶ 82.)  Such vague allegations based on unspecified "investigation" do

*First,* the Complaint does not dispute that Evolve was entitled to payment/reimbursement for the Account Analysis fees and TabaPay fees from Synapse—it merely alleges that the end users were not required to make the payments. (*See* Compl. ¶ 72 (alleging fees should have been charged to a "Synapse account titled 'Evolve fees'"), ¶ 75 (same).) But debiting the allegedly wrong account for fees it was undisputedly owed, without more, does not create an inference of fraud over administrative mistake. *See Offor v. Mercy Med. Ctr.*, No. 2:15-cv-2219 (DRH) (SIL), 2021 WL 3909839, at *4 (E.D.N.Y. Sep. 1, 2021) (holding "mistake, without more, does not make fraud highly probable"). This is especially true given Yotta admits that end user account balances were not affected—it was merely a record keeping issue between Synapse and Evolve. *See supra* at 7. *Second*, the Complaint admits that once this dispute about fees came to a head between Synapse and Evolve, Evolve took swift action to protect end users by increasing the reserve account amount required and ultimately transferring over $35,000,000 from the reserve account to the FBO accounts. (*See supra* at 7; Swaminathan Decl., Ex. B-C.) At most, Yotta alleges that Evolve misappropriated $18,186,152.06 from the FBO Accounts with its collection of Account Analysis Fees and TabaPay Fees (Compl. ¶¶ 71, 75), and it credited almost twice that to the FBO account. Accordingly, even taken as true, Yotta fails to plead any facts that show Evolve's purported temporary "misappropriation" of fees it was contractually owed caused any harm to Yotta or its end users. Yotta's conspiracy claim should be dismissed.

### D.  Yotta Fails to State a Claim for Negligent Misrepresentation or Negligence

#### 1.  Both Claims Are Barred Under the Economic Loss Doctrine.

Under New York's economic loss doctrine, "a plaintiff who has suffered economic loss, but not personal or property injury may not recover in tort if the damages are the type remedial in contract." *Gilleo v. J.M. Smucker Co.*, No. 20-cv-02519 (PMH), 2021 WL 4341056, at *7 (S.D.N.Y. Sept. 23, 2021) (internal quotation marks and citation omitted); *Bibicheff v. Chase Bank USA, N.A.*, No. 2:17-cv-4679 (DRH)(AYS), 2018 WL 4636817, at *4 (E.D.N.Y. Sep. 26, 2018). ("There is a longstanding New York rule, however, that economic loss is not recoverable under a

not satisfy 9(b) and are properly disregarded. *See San Leandro Emergency Med. Grp. Profit Sharing Plan*, 75 F.3d at 812 (allegations of falsity based on unspecified internal reports insufficient to state a claim under 9(b)).

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

theory of negligence.") (quoting *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 532 (S.D.N.Y. 2007)).  This is true regardless of whether or not the parties are in contractual privity or have a contractual remedy.[11]  *See id.* (dismissing negligent misrepresentation claim based on economic loss doctrine where no contract existed between the parties); *Conangelo v. Champion Petfoods USA, Inc.*, No. 6:18-CV-1228 (LEK/ML), 2020 WL 777462 at *15 (N.D.N.Y. Feb. 18, 2020) (dismissing negligent misrepresentation claim for parties not in contractual privity finding "[i]t is well settled that a negligence action seeking recovery for economic loss will not lie."(citation omitted)); *Black Radio Network, Inc. v. NYNEX Corp.*, No. 96 Civ. 4138 (DC), 2000 WL 64874, at *4 (S.D.N.Y. Jan. 25, 2000) ("Under New York law, where a plaintiff alleges only economic damages resulting from a defendant's alleged negligence, the plaintiff may not recover from the defendant if they are not in contractual privity.").

Here, Yotta brings this action to recoup "banking-related revenues" and damages for harm to its reputation and "enterprise value."  (Compl. ¶ 15.)  "These types of damages are classic economic losses" and the claims are thus barred by the economic loss doctrine.  *Black Radio Network, Inc.*, 2000 WL 64874, at *3; *Four Directions Air, Inc. v United States*, No. 5:06-cv-283 (NAM/GHL), 2007 WL 2903942, at *4 (N.D.N.Y. Sept. 30, 2007) (holding alleged reputational harm and lost future profits "are purely economic in nature"); *Greater New York Auto. Dealers Ass'n v. Env't. Sys. Testing, Inc.*, 211 F.R.D. 71, 82 (E.D.N.Y. 2002) ("Loss of business and loss of good will are generally classified as 'economic' damages."); *see also Duchnik v. Tops Mkts., LLC*, No. 22-CV-399 (JLS) (HKS), 2023 WL 4827951, at *12 n.12 (W.D.N.Y. July 6, 2023) (collecting cases and finding "Under New York's economic loss rule, a plaintiff may only assert a claim for negligent misrepresentation if he or she alleges personal or property damage, as opposed to economic loss." (internal quotation marks and citation omitted)).  Yotta's negligence and negligent misrepresentations claims should be dismissed.

---

[11] Yotta cannot state a claim for negligence for the additional reason "[i]t is well-established under New York law that, where a plaintiff alleges only economic damages resulting from defendant's alleged negligence, defendants owe no duty to plaintiffs with whom they are not in contractual privity." *Land Mine Enters. v. Sylvester Builders, Inc.*, 74 F.Supp.2d 401, 407 (S.D.N.Y. 1999)

**2.    The Negligent Misrepresentation Claim Fails for the Additional Reason That Yotta Fails to Plead a Special Relationship Between It and Evolve**.

"Under New York law, a claim of negligent misrepresentation must satisfy the following five elements: (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that it should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 215 (S.D.N.Y. 2007) (internal quotation marks and citation omitted). "[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Feldman v. Byrne*, 178 N.Y.S.3d 525, 530 (App. Div. 2022) (citation omitted). "[A] conventional business relationship, without more, is insufficient to create a fiduciary relationship. Rather, a plaintiff must make a showing of 'special circumstances' that could have transformed the parties' business relationship to a fiduciary one, such as control by one party of the other for the good of the other" *Id.* (citation omitted).

This Court need not go past the first element to dismiss Yotta's negligent misrepresentation claim. Not only are there no allegations that suggest a relationship beyond "a simple commercial relationship," the Account Agreement for Yotta Saving clearly limits Evolve's relationship to Yotta and its customers to a typical banking relationship. *See Dobroshi v. Bank of Am., N.A.*, 886 N.Y.S.2d 106, 109 (App. Div. 2009) ("This court has repeatedly held that an arm's length borrower-lender relationship is not of a confidential or fiduciary nature and therefore does not support a cause of action for negligent misrepresentation.") (citations omitted)); *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 402 (S.D.N.Y. 2004) (holding "knowledge of the particulars of [a] company's business—and of the true situation underlying the misrepresentations pertaining to that business ... does not constitute the type of 'specialized knowledge' that is required in order to impose a duty of care in the commercial context."). Among other things, it is explicit that (i)

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

Evolve's relationship with Yotta end users is that "of debtor and creditor, and that [Evolve] owes no fiduciary duty" to them; and (ii) Yotta and Evolve "are not partners, affiliates, or join venturers with each other."  Account Agreement, § 2.8.  Yotta's failure to plead a special, fiduciary-like, relationship with Evolve independently requires dismissal of the negligent misrepresentation claim.  *See Feldman*, 178 N.Y.S.3d at 530 (affirming dismissal of claim for negligent misrepresentation against defendant who allegedly induced plaintiff to purchase a radiology practice based on false promises for failure to identify a special relationship beyond a commercial relationship).

### E.    There is No Such Action for Negligent Interference with Contract

Yotta's claim for negligent interference with contract fails because the cause of action does not exist under New York law.[12]  *See Bishop v. Porter*, No. 02 Civ. 9542, 2003 WL 21032011, at \*12 (S.D.N.Y. May 8, 2003) (rejecting attempt "to add claims for negligent interference with contractual relations or negligent interference with economic advantage fail because neither cause of action exists"); *Alvord & Swift v. Stewart M. Muller Constr. Co.*, 385 N.E.2d 1238, 1241 (N.Y. 1978) ("Intentional interference with contractual relations is . . . recognized as a tort . . . [b]ut the interference must be intentional, not merely negligent.") (citations omitted); *Costanza Constr. Corp. v. City of Rochester*, 523 N.Y.S.2d 707, 708 (App. Div. 1987) ("A claim for tortious interference with contractual relations requires intentional interference, not merely intrusion that is negligent.").[13]

### F.    Yotta Lacks Standing to Bring A UCL Claim.

Yotta lacks standing to assert a UCL claim because it is well-established that the UCL does not apply extra-territorially and Yotta, a non-resident, has failed to allege facts that show the challenged conduct occurred in California.

California's Supreme Court has repeatedly recognized that there is a strong presumption

---

[12] There is also no such claim under California law.  *Davis v. Nadrich*, 174 Cal. App. 4th 1, 9, (2009) ("In California there is no cause of action for negligent interference with contractual relations.").

[13] The claim is also nonsensical as pled.  Yotta fails to identify the terms of its contract with its end users or how Evolve interfered with those contracts.  Yotta similarly pleads no facts or authority that show Evolve owed any duty to Yotta; nor does it identify how Evolve's purported interference with the contracts between Yotta and its end users caused any injury to Yotta.

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

against the extra-territorial application of California law and has explicitly stated that presumption applies to the UCL. *See Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1129-30 (N.D. Cal. 2014) (citing *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)). In so holding, the California Supreme Court noted "[n]either the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially" dictating that presumption against extra-territorial application "applies to [the] UCL in full force." *Sullivan*, 51 Cal. 4th at 1207. "Simply put, 'the UCL does not apply to actions occurring outside of California that injure non-residents.'" *Ehert*, 68 F. Supp. 3d at 1130 (quoting *Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, No. C-09-5815, 2010 WL 3619884, at *8), *aff'd*, 487 F. App'x 362 (9th Cir. 2012).

Yotta, a non-resident, challenges conduct that occurred outside of California, so the UCL does not apply. *See Ehert*, 68 F. Supp. 3d at 1130; *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, No. MDL 06-1770 MHP, 2007 WL 9753228, at *2 (N.D. Cal. Aug. 13, 2007) ("It is well-settled that the UCL does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California."). As shown above, Yotta is a Delaware company with its principal place of business in New York, New York. *See supra* at 5 & n.3. Yotta also admits it has no physical presence in California. (*See* Compl. ¶ 17.) Accordingly, as a non-resident, Yotta needs to plead that the challenged conduct occurred within California to state a claim under the UCL, but it fails to do so for either of its claims under the fraudulent and unlawful prongs. *See Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915-JST, 2012 WL 4761733, at *5 (C.D. Cal. Apr. 12, 2012) ("[T]he UCL reaches claims made by out-of-state residents harmed by unlawful conduct occurring inside California, it does not apply to wrongful conduct occurring outside of California.")

For its claim under the fraudulent prong of the UCL, Yotta fails to plead any facts that show the alleged misrepresentations were either received in, or disseminated from, California. *See supra* at 5, 10-11. This is fatal. *See In re Toyota Motor Corp.*, 785 F.Supp. 2d 883, 917 (C.D. Cal. 2011) (dismissing UCL claim asserted by non-resident where plaintiffs did not allege "with sufficient detail that the point of dissemination form which advertising and promotional literature that they

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

1   saw or could have seen is California") (emphasis removed); *Wilson v. Frito-Lay N. Am. Inc.*, 961

2   F. Supp. 2d 1134, 1148 (N.D. Cal. 2013) (dismissing claims of non-residents premised on alleged

3   misrepresentations where defendant was headquartered out of state).  And the conclusory allegation

4   that "Evolve planned and carried out its fraudulent scheme in California" cannot save the claim

5   because it does not comply with Rule 8 or 9(b).  *See Gustafson*, 2012 WL 4761733, at *5-6 (holding

6   allegation that "[d]efendants' scheme was devised, implemented and directed from…offices in

7   California" were "too vague" to show fraudulent or unlawful conduct occurred with California).

8         For its claim under the unlawful prong, Yotta alleges that Evolve violated various provisions

9   of law, including the Bank Secrecy Act and Regulation H, but again fails to plead any of those

10  violations occurred in California.  (Compl. ¶ 161.) [14]  This too is fatal.  *See Tidenberg v. Bidz.com,*

11  *Inc.*, No. CV 08-5553 PSG, 2009 WL 605249, at *5 (C.D. Cal. Mar. 4, 2009) (dismissing UCL

12  claim brought by non-resident even against a California company where plaintiff did "not allege

13  any specific facts linking [d]efendants' contacts to the claims [p]laintiff asserts against them").

14  Indeed, Yotta admits that it Evolve is headquartered in Tennessee and does not (and cannot) allege

15  that any of the alleged violations occurred in two branches in California.  *See Norwest Mortg., Inc.*

16  *v. Super. Ct.*, 72 Cal. App. 4th 214, 225 (1999) (holding UCL clams could not be asserted "for

17  injuries suffered by non-California residents, caused by conduct occurring outside of California's

18  borders, by defendants whose headquarters and principal places of operations are outside of

19  California").

20        Accordingly, Yotta cannot state a UCL claim, and it should be dismissed.

21        **G.**    **Yotta Fails to State a Claim for Quasi-Contract/Unjust Enrichment Against**
            **Evolve Because It Fails to Allege It Conferred a Benefit on Evolve**.
22

23        To state an unjust enrichment or quasi-contract claim, a plaintiff must show that "(1) the

24  defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good

25  conscience to permit the defendant to retain what is sought to be recovered."  *Gargano v. Morey*,

26  86 N.Y.S.3d 595, 599 (App. Div. 2018) (citation omitted).  "An unjust enrichment claim rests upon

27

28  [14] In fact, the Complaint admits that Evolve is an Arkansas bank with its principal of business in
    Memphis, Tennessee.  (*Id.* ¶ 18.)

EVOLVE BANK & TRUST'S NOTICE OF
MOTION AND MOTION TO DISMISS
4:24 CV-06456-TLT

the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009) (internal quotation marks and citation omitted).

Yotta fails to state a claim for unjust enrichment because it fails to identify any benefit that it—as opposed to its end users—conferred on Evolve. To the contrary, Yotta admits that the Evolve derived its revenues from traditional banking services to Yotta's *customers* and from "its *customer's* [sic] money." (Compl. ¶¶ 166, 168 (emphasis added).) New York law is unequivocal that an unjust enrichment claim lies only if the *plaintiff* and not a third-party conferred the benefit. *IDT Corp*, 907 N.E.2d at 274 ("In seeking [defendant's profits]…[plaintiff] does not, and cannot, allege that [defendant] has been unjustly enriched at [plaintiff's] expense because [plaintiff] did not pay the alleged fees."); *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 301, 313 (N.Y. 2018) (reaffirming *IDT* and holding that plaintiffs cannot recover costs not paid under unjust enrichment); *Mueller v. Michael Janssen Gallery PTE. Ltd.*, 225 F. Supp. 3d 201, 209 (S.D.N.Y. 2016) (dismissing unjust enrichment claim and collecting cases where courts applying "New York law have similarly rejected unjust enrichment claims where the plaintiff seeks to recover fees it did not pay"). Yotta's failure to allege it conferred any benefit on Evolve requires dismissal.

## V.    **CONCLUSION**

For all the foregoing reasons, Evolve respectfully requests this Court dismiss the Complaint in its entirety.

Dated: December 9, 2024

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP


By:  */s/ Aravind Swaminathan*

ARAVIND SWAMINATHAN
Attorney for Defendants
Evolve Bank & Trust