1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

YOTTA TECHNOLOGIES INC.,

Case No. 24-cv-06456-TLT

8

Plaintiff,

9

v.

**ORDER GRANTING MOTION TO DISMISS**

10

EVOLVE BANK & TRUST,

Re: Dkt. No. 27

11

Defendant.

12
13
     Plaintiff Yotta Technologies, Inc. seeks to hold Defendant Evolve Bank & Trust ("Evolve

14
Bank") liable for a scheme against Plaintiff's California customers.  Plaintiff, however, must first

15
meet the pleadings requirements of Rule 9(b) to invoke this Court's jurisdiction.

16
     Pending before the Court is Evolve Bank's motion to dismiss the complaint.  The Court

17
heard oral argument on Evolve Banks's motion on March 25, 2025.  ECF 48.  Having considered

18
the parties' briefs, the relevant legal authority, and for the reasons below, the Court **GRANTS** the

19
motion to dismiss.

20
**I.    BACKGROUND**

21
     Plaintiff, a Delaware corporation with a principal place of business in either "New York or

22
California," is a financial technology company ("fintech") that provides software that allows

23
customers to both manage their finances and enter daily prize drawings.   ECF 1 (Complaint,

24
"Compl.") ¶¶ 17, 23–26.  Plaintiff is not a bank and, therefore, partners with FDIC-insured

25
institutions to both hold customers' savings and issue debit and credit cards. *Id.* ¶ 27.

26
     In October 2019, Plaintiff partnered with Evolve Bank, "a small, full-service consumer

27
bank" organized under the laws of Arkansas with its headquarters in Tennessee. *Id.* ¶¶ 18, 29.

28
Evolve Bank also has locations in California.  *Id.* ¶ 18.

United States District Court
Northern District of California

On February 13, 2020, Plaintiff signed a contract with third-party Synapse Financial Technologies Inc. ("Synapse"), a former software company that acted as an intermediary between banks and fintechs, allowing Plaintiff to use its software to interface with Evolve Bank.  *Id.* ¶¶ 36, 38; *see* ECF 27, Declaration of Hank Word ("Word Decl."), Ex. A.  Evolve Bank and Synapse worked together to service Plaintiff's customers.  *Id.* ¶ 40.  Evolve Bank's electronic systems processed "certain transactions," while Synapse handled other transactions involving funds held with Evolve Bank.  *Id.*  Evolve Bank provided a continuous data stream to California-based Synapse, which was supposed to instantaneously report all customer transactions.  *Id.*  Evolve Bank also represented that it diligently safeguarded Plaintiff's funds through written representations, calls, and meetings.  *Id.* ¶¶ 43–46.  As discussed during oral argument, Plaintiff and Evolve Bank did not enter into a contract.  ECF 52 at 50:7–8.

Plaintiff's main source of revenue was the interest that Evolve Bank and Synapse paid to Plaintiff based on Plaintiff's customer funds.  Compl. ¶¶ 58.  However, in  September 2023, Evolve Bank suspended Plaintiff's interest payments.  *Id.* ¶ 59.  In response to Plaintiff's inquiries about the interest payments, on September 25, 2023 and October 3, 2023, Evolve Bank stated that it was "addressing some contractual issues with Synapse" but assured Plaintiff that the matter was being handled and customers would be protected.  *Id.* ¶¶ 61–62.  Evolve Bank and Synapse continued to report account transactions and balance information.  *Id.* ¶ 68.

On May 11, 2024, Evolve Bank suspended Plaintiff's customers' access to all funds, making customers unable to access their deposited funds with Evolve Bank.  *Id.* ¶ 88.  Evolve Bank later acknowledged that a "substantial amount of customer money" was missing and that there was a "shortfall" of tens of millions of dollars.  *Id.* ¶ 92.  Many of Plaintiff's customers "lost substantially all of their assets."  *Id.* ¶ 106.  Additionally, Evolve Bank revealed that Plaintiff's customers' personal information was "illegally obtained and released" on the dark web.  *Id.* ¶ 94.

On June 14, 2024, Evolve Bank entered into a Consent Decree with state and federal bank regulators following an investigation that identified deficiencies in Evolve Bank's "risk management and compliance with applicable laws, rules, and regulations."  *Id.* ¶ 99.

1    On September 13, 2024, Plaintiff filed a complaint against Defendants Evolve Bancorp,

2    Inc. and Evolve Bank alleging: (1) fraud; (2) conspiracy to commit fraud; (3) negligent

3    misrepresentation; (4) negligent interference with contract; (5) negligence; (6) violation of

4    California's Unfair Competition Law ("UCL"); and (7) restitution under unjust enrichment. *See*

5    Compl.

6    Evolve Bank filed a motion to dismiss and a request for judicial notice on December 9,

7    2024. ECF 27 (Motion, "Mot."); ECF 28 (request for judicial notice). On January 23, 2025, the

8    Court granted Plaintiff's voluntarily dismissal of Evolve Bancorp, Inc. from the action. ECF 41.

9    Plaintiff filed a timely opposition to Evolve Bank's motion to dismiss. Evolve Bank filed a timely

10   reply. ECF 45 ("Reply"). The Court heard oral argument on March 25, 2025. ECF 48.

## II.    JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

12   Generally, when assessing the sufficiency of a complaint under Rule 12(b)(6), the Court

13   may not consider materials outside of the pleadings. *Khoja v. Orexigen Therapeutics, Inc*., 899

14   F.3d 988, 1002 (9th Cir. 2018). Doing so would convert the motion to dismiss into a motion for

15   summary judgment. *Id*. The two exceptions to this rule are judicial notice under Federal Rule of

16   Evidence 201 and the incorporation by reference doctrine. *Id*.

17   Under FRE 201(b), "[t]he Court may judicially notice a fact that is not subject to

18   reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction;

19   or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably

20   be questioned." "Unlike rule-established judicial notice, incorporation-by-reference is a judicially

21   created doctrine that treats certain documents as though they are part of the complaint itself."

22   *Khoja*, 899 F.3d at 1002. Documents "may be incorporated by reference into a complaint if the

23   plaintiff refers extensively to the document or the document forms the basis of the plaintiff's

24   claim," *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), and "the documents'

25   authenticity. . . is not contested." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

26   Here, Evolve Bank requests the Court either take judicial notice or incorporate by

27   reference four exhibits: (1) Synapse's Consumer Interest Checking Account Agreement ("Account

28   Agreement") for Plaintiff's customers, (2) Evolve Bank's September 25, 2023 Letter to Synapse

3

1    regarding "Notice of Material Breach, Increase in Required Reserve Valance, and Reserve

2    Account Deficiency ("Breach Letter"), (3) a Statement of Evolve Bank & Trust in Support of

3    Debtor's Emergency Motion for Approval of Compromise of Controversy with Evolve Bank &

4    Trust Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Evolve's Filing in

5    the Synapse Bankruptcy Proceedings"); and (4) Plaintiff's Form D submitted to the SEC.  ECF 28

6    at 3–5

7         Regarding Exhibit A, Evolve Bank argues that the Court should incorporate Synapse's

8    Account Agreement because the complaint repeatedly refers to the agreement.  ECF 28 at 3.

9    However, a review of the complaint reveals that the complaint reveals that the complaint does not

10   explicitly cite or refer to Synapse's Account Agreement.  At most, the complaint refers once to

11   "the parties' agreement" and once to the "contracts between Synapse and Evolve."  *See* Compl. ¶¶

12   40, 72.  Evolve Bank fails to provide caselaw indicating that the incorporation by reference

13   doctrine applies where a document is only referred to twice in a complaint.  *See In re Meta Pixel*

14   *Tax Filing Cases*, 724 F. Supp. 987, 1001 (N.D. Cal. 2024) ("Although Plaintiffs' complaint refers

15   two times to Meta's 'Terms of Service,' . . . this is not enough for the document to be incorporated

16   by reference into the complaint.").  The Court DENIES Evolve Bank's request to incorporate

17   Exhibit A.  Because the complaint similarly only refers to Exhibit B, Breach Letter, and C,

18   Evolve's Filing in the Synapse Bankruptcy Proceedings, the Court DENIES Evolve Bank's

19   request incorporate Exhibits B and C.

20        Finally, Evolve Bank argues that the Court should take judicial notice of Exhibit D,

21   Plaintiff's Form D filed with the SEC.  ECF 28 at 5.  Courts may take judicial notice of public

22   records, such as SEC filings.  *See Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006)

23   (noting that courts may consider documents such as SEC filings); *In re Extreme Networks, Inc.*

24   *S'holder Derivative Litig.*, 573 F. Supp. 2d 1228, 1231 n.2  (N.D. Cal. 2008) ("Public records,

25   such as SEC filings, are properly the subject of judicial notice, and routinely considered in

26   deciding a motion to dismiss . . . .").  Accordingly, the Court GRANTS judicial notice of Exhibit

27   D.

28

### III.    LEGAL STANDARD

#### A.    Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To overcome a motion to dismiss, a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

#### B.    Rule 9(b)

Claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a plaintiff alleging fraud "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  To satisfy the heightened pleading standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

"[W]here a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotations and citation omitted).  However, the Ninth Circuit has explained that a complaint need not allege "a precise time frame," "describe in detail a single specific transaction" or identify the "precise method" by which the fraud was carried out. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  The complaint must allege "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*,

5

1    317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted).  Additionally, the "plaintiff

2    must set forth what is false or misleading about a statement, and why it is false." *Id.* (citation

3    omitted).

4    **IV.    JURISDICTION**

5        The Court addresses jurisdiction *sua sponte*.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500,

6    506 (2006) (explaining that the issue of subject matter jurisdiction may be raised "by a court on its

7    own initiative, at any stage in the litigation"); Fed. R. Civ. P. 12(h)(3) ("If the court determines at

8    any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

9        There are two bases for federal subject matter jurisdiction: federal question jurisdiction

10    pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Diversity

11    jurisdiction requires (1) complete diversity of the parties and (2) an amount in controversy of over

12    $75,000.  28 U.S.C. § 1332(a); *cf. Silbersher v. Valent Pharm. Int., Inc.*, 2023 WL 4946736, at *1

13    (9th Cir. 2023) ("A defendant may waive a challenge to personal jurisdiction by submitting to the

14    jurisdiction of the court.").  A corporation is a citizen of the state "by which it has been

15    incorporated and of the State or foreign state where it has its principal place of business." *Id.* §

16    1332(c).  The principal place of business refers to the "place where the corporation's high-level

17    officers direct, control, and coordinate the corporation's activities," referred to as the "nerve

18    center." *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010) (citations omitted).  The nerve center is

19    the "place where the majority of its executive and administrative functions are performed." *Id.* at

20    82 (internal quotations and citations omitted).

21        Here, the parties do not dispute that Evolve Bank's headquarters are located in Tennessee,

22    *see* Compl. ¶ 18, and during oral argument, Plaintiff clarified that Plaintiff's principal place of

23    business was located in California at the time this action was filed.  ECF 52 at 6:15–25; *see Grupo*

24    *Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) ("[T]he jurisdiction of the court

25    depends upon the state of things at the time of the action brought.").  Given Plaintiff's clarification

26    that its "principal place of business was not in New York," ECF 52 at 6:20–21, the Court

27    GRANTS Plaintiff leave to amend the complaint to clarify that Plaintiff's principal place of

28

United States District Court
Northern District of California

6

1    business is California, not New York.  Plaintiff shall make this jurisdictional clarification in the

2    amended complaint.

3        The Court notes, however, that it shall reconsider jurisdiction if the amended complaint

4    fails to address the Court's concerns regarding jurisdiction.  The Court is aware that both Plaintiff

5    and Evolve Bank have a history of litigation in New York.  *See Baumgartner et al v. Yotta*

6    *Technologies Inc. and Evolve Bank and Trust*, No. 24-cv-5535 (S.D.N.Y); *Weiss v. Yotta*

7    *Technologies, Inc*., No. 22-cv-8569 (S.D.N.Y).

8    **V.    SYNAPSE AS A NECESSARY PARTY**

9        The Court next considers whether Synapse is a necessary party to the litigation under Rule

10    19.  *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008) ("A court with proper

11    jurisdiction may . . . consider *sua sponte* the absence of a required person and dismiss for failure to

12    join.").

13        "Rule 19 requires a three-step inquiry."  *Jamul Action Comm. v. Simermeyer*, 974 F.3d

14    984, 991 (9th Cir. 2020).  The Court must first determine if the party is a "necessary" party under

15    Rule 19(a).  *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir.

16    2012).  If so, the Court must decide whether it is feasible to order joinder of the necessary party.

17    *Id.*  Finally, if joinder is not feasible, the Court must evaluate if the absent party is "indispensable"

18    under Rule 19(b), or whether "in equity and in good conscience" the claims can proceed without

19    the party.  *Id.*; Fed. R. Civ. P. 19(b).  "Indispensable parties under Rule 19(b) are persons who not

20    only have an interest in the controversy, but an interest of such a nature that a final decree cannot

21    be made without either affecting that interest, or leaving the controversy in such a condition that

22    its final termination may be wholly inconsistent with equity and good conscience."  *E.E.O.C. v.*

23    *Peabody W. Coal Co.*, 400 F.3d 774, 780 (9th Cir. 2005) (internal quotations and citation

24    omitted).

25        During oral argument, Plaintiff argued that Synapse was not a necessary party because

26    Synapse and Defendant are joint tortfeasors.  ECF 52 at 22:12–15.

27        Although the Court agrees that joint tortfeasors are not indispensable parties under Rule

28    19, the complaint still fails to sufficiently allege that Synapse and Evolve Bank were, in fact, joint

United States District Court
Northern District of California

7

tortfeasors.  *See Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 8 (1990) ("As potential joint tortfeasors with Synthes, Dr. LaRocca and the hospital were merely permissive parties."); *Clear-View Techs., Inc. v. Rasnick*, No. 13-CV-02744, 2015 WL 1307112, at *4 (N.D. Cal. Mar. 23, 2015) ("[J]oint tortfeasors and alleged co-conspirators are not indispensable parties for purposes of Rule 19."). "To support the inference that [Synapse] is a joint tortfeasor . . . Plaintiff must allege [Synapse] gave 'substantial assistance or encouragement' to [Evolve Bank] to act in the manner alleged." *Nelson v. County of Sacramento*, 926 F. Supp. 2d 1159, 1171 (E.D. Cal. Feb. 26, 2013). The complaint here failed to do so—Plaintiff did not "specify the conduct in which Blue Source engaged such that Blue Source could be held jointly and severally liable." *Adobe Systems Inc. v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945, 974 (N.D. Cal. 2015).

Accordingly, the Court GRANTS Plaintiff leave and ORDERS to address Synapse's joint tortfeasor's status in the amended complaint.

The Court next considers the merits of Evolve Bank's motion to dismiss.

## VI. DISCUSSION

Evolve Bank seeks to dismiss the entire complaint under New York law.  ECF 27.

### A. Evolve Bank Fails to Meet its Burden and Show that New York Law Applies

As a preliminary matter, Evolve Bank argues that the Court should apply New York, not California, law to evaluate the sufficiently of the complaint. ECF 27 at 9-11.  Plaintiff argues that California law governs the complaint.  ECF 42 at 9.

Both parties concede that the Court should apply California's three-step governmental interest test to determine whether to apply California or New York law applies.  *See* ECF 27 at 9–10; ECF 42 at 9.  Indeed, "[a] federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001); *cf. Battle v. Taylor James*, LLC, 607 F. Supp. 3d 1025, 1043 (C.D. Cal. 2022) ("[A]bsent a controlling choice-of-law agreement between parties, California courts determining whether to apply another state's law in an action engage in a 'governmental interest' analysis.").

Under California's governmental test:

United States District Court
Northern District of California

> First, the Court determines whether the relevant laws are the same or different; [second,] if there is a difference, the Court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists; and [third,] if there is a true conflict, then the Court compares the nature and strength of each jurisdiction's interest and applies the law of the state whose interest would be more impaired if its law were not applied.

*In re Capacitors Antitrust Litig.*, No. 17-MD-02801, 2020 WL 6462393, at *6 (N.D. Cal. Nov. 3, 2020). As the party advocating for the application of foreign law, Evolve Bank bears the burden of proving that New York applies. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010) ("The party advocating the application of a foreign state's law bears the burden of identifying the conflict between that state's law and California's law on the issue and establishing that the foreign state has an interest in having its law applied.").

Here, Evolve Bank argues that courts have previously recognized that California and New York have different negligent misrepresentation and unfair competition claims, and that the complaint does not allege that any alleged misrepresentations originated from California. ECF 27 at 10–11. During oral argument, Evolve Bank added that California has no meaningful interest in applying its negligent misrepresentation law. ECF 52 at 14:16–25, 15:1–7.

Despite having the benefit of oral argument, Evolve Bank failed to meet its burden of identifying a material difference based on the facts of this case. *See Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 540–44 (C.D. Cal. 2012) ("Defendant has the burden of showing that there is an actual conflict between California and other law. This burden requires Defendant to convince this Court of "material" differences in the law, as shown "on the facts of this case."). Evolve Bank's general references to California's interests and Evolve Bank's representations outside of California do not provide the Court with the required robust analysis to perform a choice of law analysis. *See Gonsalves v. Conair Corp.*, No. 21-cv-138, 2021 WL 3521078, at *4 (C.D. Cal. May 26, 2021) ("Conair applied precedent and case law generally . . . [the Ninth Circuit] require a more robust analysis than the general applications Conair provided."); *compare with Mosquea v. American Honda Motor Co., Inc.*, 443 F. Supp. 3d 1115, 1125 (C.D. Cal. 2020) ("Honda has gone to great lengths to analyze and substantiate the material differences. . . For instance, Honda

1    highlights that consumer protection acts in Colorado, Delaware, Kentucky and several other states

2    require scienter, but that scienter is not required under California's CLRA and UCL or the relevant

3    consumer fraud statutes in Texas, North Carolina, and Georgia.").  Indeed, "the government

4    interest test requires analysis of how the relevant differences in state law are material to the

5    particular litigation." *Cadena v. American Honda Motor Co., Inc.*, 2018 WL 8130613, at * 6 (C.D.

6    Cal. 2018) (collecting cases).

7        Because Evolve Bank failed to meet its burden, the Court applies California law to

8    evaluate the sufficiency of the complaint.  *See In re Hyundai and Kia Fuel Economy Litig.*, 926

9    F.3d 539, 562 (9th Cir. 2019) ("[B]efore the district court, no objector presented an adequate

10   choice-of-law analysis or explained how, under the facts of this case, the governmental interest

11   test's three elements were met.  Further, no objector argued that differences between the consumer

12   protection laws of all fifty states precluded certification of a settlement class. Consequently,

13   neither the district court nor class counsel were obligated to address choice-of-law issues beyond

14   those raised by the objector . . ."); *Bruno*, 280 F.R.D. at 540 ("Because Defendants have failed to

15   show that "the laws are materially different," this Court does not proceed to the other two steps in

16   the governmental interest test.").

17       **B.    The Complaint Fails to Sufficiently Allege a Fraud Claim Under Rule 9(B)**

18       Evolve Bank argues that the complaint improperly treats Evolve Bank and Synapse the

19   same. ECF 27 at 12–13. Evolve Bank also argues that the complaint fails to allege the specifics of

20   Evolve Bank's alleged misrepresentations.  *Id.* at 13–16.  Plaintiff argues the complaint

21   sufficiently alleges one fraudulent scheme where Evolve Bank stole customer funds while

22   promising that it would safeguard the funds.  ECF 42 at 13–16.

23       In California, the elements for a cause of action for fraud consist of: "(a) misrepresentation

24   (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c)

25   intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."

26   *Engalla v. Permanent Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997) (internal citations and

27   quotations omitted).

28       Here, the complaint alleges that Evolve Bank intentionally misrepresented the following to

United States District Court
Northern District of California

10

Plaintiff:

(1) Essentially continuous representations, from 2020 to May 11, 2024, that each and every transaction that Evolve effected was being reported to Yotta and its end users on an essentially real-time basis;

(2) Essentially continuous representations, from 2020 to May 11, 2024, as to the essentially real-time account balances of Yotta customers;

(3) Bi-weekly oral representations, from late 2022 to early 2023 delivered by Evolve employees at Compliance Check-in meetings that there were no serious compliance issues or risk management problems impacting the availability of Yotta user funds;

(4) Written representations, delivered via email on September 24, 2020 that Evolve "[e]nsures clients meet regulatory, compliance and risk mitigation requirements for all solutions," that Evolve "enforce[s] federally mandated regulations," and that its technology team "[t]ediously test[s] and analyze[s] solutions before going live;"

(5) Written representations, posted on the Evolve website that Evolve's systems are "highly secure" and that user "data is stored, and money is transferred at the highest industry standard set by the Federal Reserve;"

(6) Oral representations by Evolve's Chairman Scot Lenoir on or about September 24, 2020, April 13, 2021, August 24, 2021, October 24, 2022, December 7, 2022, that Evolve had the organizational and technical ability to safeguard user funds;

(7) Written representations by Hank Word, Evolve's President of Open Banking on or about September 25, 2023 that problems with Synapse were merely the result of "some contractual issues with Synapse" that were "being handled" in a manner that would "protect end users;"

(8) Written representations by Lenoir, on or about October 3, 2023, that problems with Synapse were merely the result of "some contractual issues with Synapse," and that Yotta could "transition to another bank" should it or its users desire to do so;

(9) Written representations by Evolve's outside counsel, Jeffrey P. Naimon of Orrick, Herrington & Sutcliffe LLP on or about November 2, 2023, that problems with Synapse were merely the result of "contractual disagreement that has occurred between Evolve and Synapse Financial Technologies, Inc." that could plausibly be resolved "in the next few weeks;"

(10) Evolve's written representation on or about May 11, 2014 that it was "maintain[ing] the integrity and security of end user accounts."

(11) Evolve's May 11, 2023 draft customer agreement's representation that customers could withdraw funds that they had deposited into their accounts.

11

*Id.*

The Court finds that these allegations fail to sufficiently allege fraud pursuant to Rule 9(b). *See Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.").

The complaint fails to allege the "who" behind misrepresentations one, two, three, four, five, ten, and eleven. "Rule 9(b) requires that the plaintiff allege the individual that has made the misrepresentation." *United States v. Safran Grp.*, No. 15-cv-00746, 2017 WL 235197, at *10 (N.D. Cal. Jan. 19, 2017). "Where fraud has been allegedly perpetrated by a corporation, a plaintiff must allege the names of the employees or agents who purportedly made the statements," or at least their title and job responsibilities. *Id.* (internal citations omitted). Here, Plaintiff does not provide the names or job titles of the employees who made the alleged misrepresentations. Compl. ¶ 112. Plaintiff's allegation that Evolve Bank generally made these representations is insufficient to meet this requirement. *See Safran Grp.*, 2017 WL 235197, at *10; *see also Smith v. Ygrene Energy Fund, Inc.*, No. 17-CV-01258, 2017 WL 3168519, at *5 (N.D. Cal. July 26, 2017) (finding that plaintiffs did not meet the heightened pleading standard of Rule 9(b) when they failed to identify defendants' employees who made the "false statements, except in the most generic way").

Moreover, the complaint's reference to "essentially continuous representations" from 2020 to 2024 in misrepresentations one and two fail to "detail with particularity the time, place, and manner of each act of fraud." *Moran v. Bromma*, 675 F.App'x. 641, 645 (9th Cir. 2017). Here, Plaintiff fails to allege the details behind each alleged representation. *See Depot, Inc. v. Caring for Montanans, Inc*., 915 F.3d 643, 668 (9th Cir. 2019) ("Plaintiffs vaguely allege that defendants made these misrepresentations '[i]n the course of marketing' the plans to plaintiffs over a period of eight years—from 2006 to 2014. Plaintiffs do not allege the details of these misrepresentations, such as when defendants made them, where or how defendants made them, to whom they were made, or the specific contents of the misrepresentations."); *Moran*, 675 F.App'x. at 645 ("White's general allegations that Bromma "made false representations in 2012" and that Bromma knew about Pearson's illegal acts do not meet this standard.").

Finally, the complaint fails to allege the "where" for misrepresentations six, seven, eight, and nine. "Under the 'where' requirement, Rule 9(b) requires an allegation of the context of the false representations." *Safran Grp.*, 2017 WL 235197, at *11 (citing *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400–01 (9th Cir. 1986)). Plaintiff must allege "in what documents or context the alleged misrepresentations were made." *Id.* Here, Plaintiff simply alleges that the alleged misrepresentations were "oral representations" and "written representations," but does not allege where the representations came from. *See id.* (finding that plaintiffs failed to plead the "where" requirement when plaintiffs failed to allege "whether the misrepresentations were integrated into the contract for sale, were made separately by letter or by email, or were made as part of conversations among representations of the parties").

Because Plaintiff did not sufficiently plead the "who, what, when, where, and how" of the misrepresentations, the Court GRANTS Defendant's motion to dismiss as to the fraud claim.

## C. The Complaint Fails to Sufficiently Allege a Conspiracy to Commit Fraud Claim

Evolve Bank argues that, because Plaintiff's conspiracy to commit fraud claim fails because the complaint failed to sufficiently allege a fraud claim. ECF 27 at 18.

The Court agrees. *See De Laveaga Serv. Ctr., Inc. v. Nationwide Ins. Co.*, No. 21-cv-03389-BLF, 2022 WL 2357002, at *2 (N.D. Cal. June 30, 2022) (finding that the claim for conspiracy to commit fraud failed because the fraud claim failed to meet the heightened pleading standard of Rule 9(b)); *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1096 (N.D. Cal. 2017) ("[T]here is no separate tort of civil conspiracy and no action for conspiracy to commit a tort unless the underlying tort is committed and damage results therefrom."). Plaintiff must plead the "the who, what, when, where, and how of the misconduct charged" of the alleged agreement to commit fraud to meet the heightened pleading standard. *See Vess*, 317 F.3d at 1106.

Accordingly, the Court GRANTS Defendant's motion to dismiss as to conspiracy to commit fraud.

## D. The Economic Loss Doctrine Precludes Plaintiff's Negligence and Negligent Misappropriation Claims

Evolve Bank argues that Plaintiff's negligent misrepresentation and negligence claims are

1    barred by the economic loss doctrine.  ECF 27 at 19–20.  Plaintiff argues that the economic loss

2    doctrine does not apply because Plaintiff had a special relationship with Evolve Bank. ECF 42 at

3    19-20.

4        The economic loss doctrine bars "recovery in tort for negligently inflicted purely economic

5    losses, meaning financial harm unaccompanied by physical or property damage."  *See Sheen v.*

6    *Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022) (internal quotation and citation omitted).

7    The rule is "particularly strong when a party alleges commercial activities that negligently or

8    inadvertently went awry" and applies even "where a plaintiff is not in privity of contract with the

9    defendant." *Johnson v. Maker Ecosys. Growth Holdings, Inc.*, No. 20-cv-02569-MMC, 2023 WL

10   2191214, at *5 (N.D. Cal. Feb. 22, 2023) (internal quotation and citation omitted).  An exception

11   to the economic loss doctrine is when a special relationship existed between the parties.  *Huynh v.*

12   *Quora, Inc.*, 508 F. Supp. 3d 633, 654 (N.D. Cal. 2020).

13       The Court notes that neither party provided the Court with caselaw addressing California's

14   special relationship standard.  However, because "the ordinary bank-customer relationship is not a

15   'special relationship' giving rise to tort remedies," *Freedom Gold USA LLC v. Bank of America,*

16   *N.A.*, No. 24-cv-8360, 2024 WL 5368652, at *7 (C.D. Cal. Nov. 15, 2024), the Court finds that

17   Plaintiff cannot rely on its customers' banking relationship with Evolve to escape the economic

18   loss doctrine.  *See Fabian v. LeMahieu*, No. 19-cv-54, 2019 WL 4918431, at *11 (N.D. Cal. Oct.

19   4, 2019) ("[P]laintiff asserts that Nano Defendants "custodianship" over plaintiff's and the

20   proposed class' XRB investments . . .created a special relationship . . . the FAC baldly alleges that

21   Nano Defendants' "significant control creates a special relationship giving rise to a fiduciary duty

22   . . . Such "conclusory allegations of law ... are insufficient to defeat a motion to dismiss.")

23   (cleaned up).

24       Accordingly, the Court GRANTS Evolve Bank's motion to dismiss Plaintiff's negligence

25   and negligent misrepresentation claims.

26   **E.    California Does Not Recognize a Cause of Action for Negligent Interference
        with Contract**

27

28   Evolve Bank argues that California does not recognize a cause of action for negligent

United States District Court
Northern District of California

1 │ interference with contractual relations. ECF 27 at 22 n.12. Plaintiff argues that the complaint

2 │ sufficiently alleges the elements for a claim for negligent interference with prospective economic

3 │ relations. ECF 42 at 20–21.

4 │      The Court agrees that "California does not recognize a cause of action for negligent

5 │ interference with contractual relations." *Pour v. Wells Fargo Bank*, No. 20-cv-2447, 2020 WL

6 │ 12893826, at *7 (N.D. Cal. Dec. 1, 2020). Therefore, the Court GRANTS Evolve Bank's motion

7 │ to dismiss Plaintiff's negligent interference with contract claim.

8 │      However, because Evolve Bank does not provide persuasive or binding caselaw regarding

9 │ the sufficiency of Plaintiff's negligent interference with prospective economic relations claim, and

10 │ given Rule 15's liberal pleading standard, the Court grants Plaintiff leave to amend the complaint

11 │ to include a negligent interference with contractual relations claim. *See Lopez v. Smith*, 203 F.3d

12 │ 1122, 1130 (9th Cir. 2000) ("The magistrate judge acknowledged that Lopez could cure the

13 │ deficiencies in his complaint by naming the correct defendants. The dismissal without leave to

14 │ amend was therefore contrary to our longstanding rule that "[l]eave to amend should be granted 'if

15 │ it appears at all possible that the plaintiff can correct the defect.'"); *Cisco Sys., Inc. v.

16 │ STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 899 (N.D. Cal. 2014) ("As it is unclear what claim

17 │ plaintiff is trying to allege under the "interference with business relations" name, defendant's

18 │ motion to dismiss as to claims 4 and 5 is GRANTED with leave to amend for plaintiff.").

19 │      **F.    The Complaint Fails to Sufficiently Allege that UCL standing**

20 │      Evolve Bank argues that Plaintiff lacks standing to assert a UCL claim because Plaintiff is

21 │ a non-California resident; and the complaint fails to allege that a meaningful portion of the

22 │ misconduct occurred in California. ECF 27 at 23–24. Plaintiff argues that the complaint

23 │ sufficiently alleges that the alleged misconduct occurred in California. ECF 42 at 22–23.

24 │      "The UCL prohibits unlawful, unfair or fraudulent business acts or practices and unfair,

25 │ deceptive, untrue or misleading advertising." *In re Turner*, 859 F.3d 1145, 1150–51 (9th Cir.

26 │ 2017). California "restricts standing for individuals alleging UCL . . . claims to persons who

27 │ 'ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair

28 │ competition.'" *Hinjos v. Kohl's Corp*, 718 F.3d 1098, 1103 (9th Cir. 2013) (quoting Cal. Bus. &

15

United States District Court
Northern District of California

1    Prof.Code §§ 17204, 17535).  "The 'lost money or property' requirement requires a plaintiff to

2    demonstrate 'some form of economic injury' as a result of his transactions with the defendant."

3    Id. (cleaned up.)  "The critical issues are whether the injury occurred in California and whether the

4    conduct of [the defendant] occurred in California."  *Tidenberg v. Bidz.com, Inc.*, No. 08-cv-5553,

5    2009 WL 605249, at *4 (N.D. Cal. Mar. 4, 2009).

6            The Court agrees that the complaint fails to sufficiently allege standing for a UCL claim.

7    In evaluating the standing for UCL, "the location of the alleged conduct giving rise to liability

8    controls application of UCL, not the domicile of the plaintiff or defendant."  *Gross v. Symantec*

9    *Corp.*, No. 12-cv-154, 2012 WL 3116158, at *6 (N.D. Cal. 2012).  Here, although Plaintiff's UCL

10   claim is based on Evolve Bank's alleged transmission of false fund reports to Plaintiff customers,

11   lack of ability to safeguard user funds, failure to secure user funds, and contractual disagreement

12   with Synapse, Compl. ¶ 162, the complaint fails to sufficiently allege that this alleged misconduct

13   occurred in California.  Nor does the complaint allege that the operations or decisions that resulted

14   in the misconduct occurred in California.  *See Muniz v. Wells Fargo & Co*., No. 17-cv-4995, 2018

15   WL 2197556, at *4 (N.D. Cal. May 14, 2018) ("[T]he FAC contains no facts to support Muniz's

16   conclusory allegation that defendant's 'scheme . . . emanated from California', or any other factual

17   allegations showing the acts that form the basis of Muniz's claim occurred in California."); *Kay v.*

18   *Cooper Cane, LLC*, 549 F. Supp. 3d 1014, 1021 (N.D. Cal. 2021)  ("Though Copper Cane is based

19   in California and it is possible that marketing decisions may flow from its headquarters, Plaintiffs

20   do not allege Copper Cane handles its own marketing or that Dodge's purchase was otherwise

21   "directed from California or had anything to do with California"); *Symantec*, 2012 WL 3116158 at

22   *6 (N.D. Cal. 2012) ("Plaintiff does not describe the geography of Symantec's "relevant

23   operations" with the same degree of specificity as in Parkinson. . .While Plaintiff does allege that

24   Symantec is headquartered in Mountain View, CA . . .several courts have found that this

25   allegation is not enough to create a plausible inference that the unlawful conduct emanated from

26   that location.").  Plaintiff's allegation that Evolve Bank has locations in California, Compl. 18,

27   does not change this conclusion.  *See Kay*, 549 F. Supp. 3d at 1021 ("[A]n inference, however

28   reasonable, about the locus of corporate power does not overcome the heavy presumption against

16

1    extraterritorial application and establish a "sufficient nexus between California and the

2    misrepresentations.");*Wilson v. Frito-Lay North America, Inc*., 961 F. Supp. 2d 1134, 1148 (N.D.

3    Cal.) ("Plaintiffs are located in California, Defendant is located in Texas, and Plaintiffs have not

4    alleged any activity within California except their own purchase of the Purchased Products.").

5           Accordingly, the Court GRANTS Evolve Bank's motion to dismiss Plaintiff's UCL claim.

6    **G.    The Complaint Fails to Allege that Plaintiff Conferred a Benefit on Evolve Bank
         for an Unjust Enrichment Claim**

7

8           Evolve Bank argues that the complaint fails to identify any benefit that was conferred on

9    Evolve Bank.  ECF 27 at 25. Plaintiff argues that, as a bank, Evolve Bank is in the business of

10    profiting from customer deposits.  ECF 42 at 23.

11           "To allege unjust enrichment as an independent cause of action, a plaintiff must show that

12    the defendant received and unjustly retained a benefit at the plaintiff's expense."  *ESG Capital*

13    *Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).

14           The Court agrees that the complaint fails to sufficiently allege that Plaintiff *itself* conferred

15    a benefit on Evolve Bank.  *See Upper Deck Co. v. Flores*, 569 F. Sipp. 3d 1050, 1072 (S.D. Cal.

16    2021) ("While privity or a direct relationship between the parties is not required, Plaintiff must

17    have conferred a benefit to [a] Defendant which it unjustly retained.").  Instead, the complaint

18    alleges that Evolve Bank was enriched "by retaining Yotta's customers' money." Compl. ¶ 173.

19    Thus, the alleged source that actually paid Evolve Bank was Plaintiff's customers, not Plaintiff.

20    Without an allegation that sufficiently connects Evolve Bank's enrichment to Plaintiff itself,

21    Plaintiff cannot sustain an unjust enrichment claim.  *See Durell v. Sharp Healthcare*, 183 Cal.

22    App. 4th 1350, 1370 (Cal. Ct. App. 2010) ("The fact that one person benefits another is not, by

23    itself, sufficient to require restitution.  The person receiving the benefit is required to make

24    restitution only if the circumstances are such that, as between *the two individuals*, it is unjust for

25    the person to retain it.") (emphasis added); *Estate of Hoefer v. ATC Realty Fifteen, Inc*., No. 20-

26    cv-6698, 2021 WL 148087, at *4 (N.D. Cal. Jan. 15, 2021) ("[T]he FAC alleges that Wells Fargo

27    was the entity that paid Defendant the Policy's death benefit. Absent any allegations that Plaintiff

28    conferred a benefit on Defendant, the FAC's allegation that Defendant was enriched by receiving

United States District Court
Northern District of California

17

1    the Policy's death benefits from Wells Fargo cannot sustain its unjust enrichment claim.").

2        Accordingly, the Court GRANTS Evolve Bank's motion to dismiss Plaintiff's unjust

3    enrichment claim.

4    **VII.    LEAVE TO AMEND**

5        Pursuant to Rule 15(a)(2), A party may amend its pleadings with the opposing party's

6    written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave

7    when justice so requires." *Id*. This policy is applied with "extreme liberality." *Eminence Capital,*

8    *LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003) (internal citation omitted). The Supreme

9    Court has outlined five factors to consider in deciding whether leave to amend is warranted: (1)

10   bad faith on the part of the movant, (2) undue delay by the movant, (3) repeated amendments by

11   the movant, (4) undue prejudice to the nonmovant, and (5) futility of the proposed amendment.

12   *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Amendment need not be permitted when it would be

13   futile—that is, when no set of facts can be proved under the amendment to the pleadings that

14   would constitute a valid and sufficient claim." *Invenergy Thermal LLC v. Watson*, 2024 WL

15   5205745, at *3 (9th Cir. 2024) (internal quotation omitted).

16       Because California does not recognize a negligent interference with a contract claim, as

17   discussed above, the Court denies Plaintiff leave to amend its negligent interference with a

18   contract claim because amendment would be futile.  *See Cruz v. Select Portfolio Servicing, Inc.*,

19   No. 19-cv-00283, 2019 WL 2299857, at *6 (N.D. Cal. 2019) ("[I]t would be unduly prejudicial to

20   require Defendants to continually litigate claims which fail as a matter of law.").  However, the

21   Court grants Plaintiff leave to amend the complaint to assert a negligent interference with

22   prospective relations claim.  *See Cisco Sys., Inc. v. TMicroelectronics, Inc*., 77 F. Supp. 3d 887,

23   899 (N.D. Cal. 2014) ("As it is unclear what claim plaintiff is trying to allege under the

24   'interference with business relations' name, defendant's motion to dismiss as to claims 4 and 5 is

25   GRANTED with leave to amend for plaintiff.").

26       Regarding Plaintiff's remaining claims for fraud, conspiracy to commit fraud, negligent

27   misrepresentation, negligence, UCL, and unjust enrichment, the Court finds that prejudice to

28   Evolve Bank would be minimal.  After considering the remaining Rule 15 factors, and in an

United States District Court
Northern District of California

18

1   abundance of caution, the Court finds the presumption in favor of granting Plaintiffs leave to

2   amend applies.  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[A] district

3   court should grant leave to amend even if no request to amend the pleading was made, unless it

4   determines that the pleading could not possibly be cured by the allegation of other facts.").

5   **VIII.    CONCLUSION**

6           For the foregoing reasons, Evolve Bank's motion to dismiss is **GRANTED**.

7           The Court GRANTS Evolve Bank's motion to dismiss Plaintiff's fraud claim because the

8   complaint fails to plead Evolve Bank's alleged misrepresentations with sufficient particularity

9   under Rule 9(B).

10          The Court GRANTS Evolve Bank's motion to dismiss Plaintiff's conspiracy claim because

11   the complaint fails to sufficiently allege the underly fraudulent misconduct.

12          The Court GRANTS Evolve Bank's motion to dismiss Plaintiff's negligence and negligent

13   misappropriation claims under the economic loss doctrine.

14          The Court GRANTS Evolve Bank's motion to dismiss Plaintiff's negligent interference

15   with contract claim because California does not recognize such a claim.

16          The Court GRANTS Evolve Bank's motion to dismiss Plaintiff's UCL claim because the

17   complaint fails to sufficiently allege standing.

18          The Court GRANTS Evolve Bank's motion to dismiss Plaintiff's unjust enrichment claim

19   because the complaint fails to allege that Plaintiff itself conferred a benefit on Evolve Bank.

20          The Court also ORDERS Plaintiff to sufficiently allege jurisdiction and Synapse's joint

21   tortfeasors status in the amended complaint.

22          Plaintiff shall file an amended complaint consistent with this order no later than **June 2,**

23   **2025.**  No new claims or parties may be added without the Court's prior approval.  A failure to

24   meet this deadline will result in dismissal with prejudice under Federal Rule of Civil Procedure

25   41(b).

26          A Further Case Management Conference is set for 11/20/2025 at 2:00 PM  -

27   Videoconference Only. Joint Case Management Statement due by 11/13/2025. The Amended

28   Pleadings deadline is extended to June 2, 2025.  All dates are maintained except as modified

United States District Court
Northern District of California

herein.  ECF 35.

      This Order resolves ECF 27.

      IT IS SO ORDERED.

Dated: May 15, 2025

 

                                    TRINA L. THOMPSON
                                    United States District Judge

United States District Court
Northern District of California

20