UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOTTA TECHNOLOGIES INC., <br><br> Plaintiff, <br><br> v. <br><br> EVOLVE BANK & TRUST, <br><br> Defendant. | Case No. 3:24 CV-06456-TLT <br><br> **JOINT DISCOVERY LETTER** <br><br> Trial Date: June 21, 2027 <br> Date Action Filed: Sept. 13, 2024 |

  Pursuant to this Court's October 1, 2025 Discovery Order (Dkt. No. 85) (the "Order"), the parties met and conferred in good faith to resolve their dispute concerning RFPs 34, 35, 36, 39, 40, 42, and 44 (the "Category 3" RFPs referenced in the Order) prior to filing the letter. The parties were able to resolve their disputes regarding RFPs 40, 42, and 44, but were unable to resolve their disputes regarding RFPs 34, 35, 36, and 39. Pursuant to the Order and the Court's Standing Order in Civil Cases § 21, Plaintiff and Defendant submit this joint letter addressing Plaintiff's request to compel Defendant to produce certain documents.

Dated: October 15, 2025

Respectfully submitted,

Mandel Bhandari LLP

Orrick, Herrington & Sutcliffe LLP

By: */s/ Rishi Bhandari*
RISHI BHANDARI
Attorney for Plaintiff
Yotta Technologies Inc.

By: */s/ Aravind Swaminathan*
ARAVIND SWAMINATHAN
Attorney for Defendant
Evolve Bank & Trust

2

JOINT DISCOVERY LETTER:
NO. 3:24 CV-06456-TLT

## I. Plaintiff's Section

**Reserve Funds (RFPs 34 and 35)**: These Requests seek documents "relating to Defendant's contributions to and withdrawals from reserve funds relating to FBO accounts" and "[d]ocuments sufficient to show all transactions" involving the same reserve funds. Defendant has represented that it created two accounts related to Synapse users, and Plaintiff agreed to limit these Requests to those two accounts.

Both parties have argued that these accounts are relevant to the case. Yotta alleges in its Amended Complaint that these reserve funds were not sufficient to make up for the money Evolve stole, and on at least one occasion Evolve misappropriated nearly $8 million from one of the reserve accounts. *Id.* ¶127. In its MTD, Evolve argues that it did not steal customer funds because the supposed $35 million reserve fund exceeded the amount that Defendant stole from customers. Dkt. #65 at 18 ($18 million in theft "more than offset by Evolve's $35 million reserve infusion"). Evolve also repeatedly argues that the fact that Synapse funded a reserve account proves that it did not intend to steal customer funds. *Id.* at 12, 13, 14-15. Yet Evolve's own September 25, 2023 letter demonstrates that the Reserve Accounts were insufficient, stating that the "Reserve Account" balance is "deficient" and demanding that Synapse fund the Reserve Account "with an amount equal to $50 million." Dkt. #65-2, at p. 5.

To determine the facts regarding these reserve funds, RFPs 34 and 35 seek documents sufficient to show transactions involving the reserve funds and communications relating to contributions and withdrawals from these funds. Evolve admits that there is a ledger for each of the two reserve accounts at issue. Yotta has requested that Evolve produce those two ledgers and, to the extent the ledgers do not provide this information, documents sufficient to identify the transactions in these accounts and the source/recipient of the funds being transacted. These are highly relevant, and minimally burdensome documents to produce. Yotta also requested all communications relating to contributions to and withdrawals from these two accounts that occurred after January 1, 2020. Again, these documents are critical to understanding why money was withdrawn from the accounts, how much money was subsequently added, and why the accounts were ultimately insufficient.

Unable to dispute that both parties have placed the sought documents at issue in this case, Evolve argues that Yotta has not requested these documents. But the two reserve accounts are indisputably "reserve funds relating to FBO accounts." (Similar documents were also sought in RFPs 14 and 25. Ex. A.) Evolve's also argues that there are only two transactions that, in Evolve's opinion, directly impact the Synapse FBO accounts. Evolve will agree to produce documents only about those two transactions. This is improper. Evolve is trying to make itself the arbiter of which transactions in these accounts somehow relate to FBO accounts. That makes no sense because the reserve account as a whole relate to the FBOs containing Yotta end user's funds. As Evolve admits, the reserve accounts were the safeguard to address shortfalls in these FBOs and any transactions that increased or decreased those funds are relevant.

The documents at issue are limited, narrowly identified, and minimally burdensome. Evolve should produce: (1) the two reserve accounts ledgers and, to the extent the ledgers do not provide this information, documents sufficient to identify what the reserve accounts transactions were and the source/recipient of the funds being transacted; and (2) all communications relating to contributions to and withdrawals from these two accounts that occurred on or after 1/1/2020.

**The Mercury Migration (RFP 36)**: This Request relates to the botched migration of $3.2

billion in end user from funds from the Synapse platform onto its own platform and the resulting loss of user funds. Yotta has pled that there were at least two critical errors in the migration. ***First***, at the time of the migration, Evolve knew that it had stolen at least $18 million in fees from the FBO account(s) that held Yotta and Mercury users' funds. Evolve nevertheless paid Mercury users in full, thereby requiring the remaining users to absorb the full loss associated with the theft. ***Second***, even setting aside the shortfall, Evolve transferred more Mercury customer funds than it was supposed to be holding, thereby increasing the shortfall in Yotta customer funds. As a result, the Mercury migration led to a loss of at least $50 million of end user funds.

Yotta served the First Requests (including RFP 36) in February 2025. Evolve served objections and the parties held countless meet and confers on RFP 36, and others. Yotta moved to compel Evolve to produce documents responsive to RFP 36 on July 3, 2025 (Dkt. #62) and again on August 4, 2025 (Dkt. #74). On October 1, 2025, the Court set an October 15 deadline for the parties to resolve their disputes concerning various Requests including RFP 36. Dkt. #85. Eight months after RFP 36 was served and after countless meet and confers and two separate motions to compel, on October 13, Evolve for the first time (a) revealed that it had hired an expert to conduct an after-the-fact study to prove that it did nothing wrong in connection with the Mercury migration and (b) proposed that its production of its own expert report satisfy RFP 36. This is obviously improper and no substitute for actual discovery of the relevant facts. Even if an expert report could somehow aid the discovery process, it should have been disclosed and produced eight months ago, not after Yotta has been forced to file its third motion to compel the Mercury migration documents. The current fact discovery cut-off is December 19, 2025. While Yotta hopes that it will be extended, it simply is not possible to stage discovery at this late date.

While Evolve has argued that RFP 36 is overly burdensome, it has refused to explain the nature or magnitude of the burden, or to propose any way in which the burden can be streamlined. To the extent there are a lot of migration-related communications that deal with irrelevant logistical minutiae, Yotta very much wants to avoid the production of those documents. Because Evolve has refused to work with Yotta to minimize any burden imposed by the Request, the only way that Yotta can identify to minimize the burden is to limit production to those custodians who have the most important Mercury-migration documents.[1]

**Fees & Charges (RFP 39):** This Request relates to fees and charges improperly levied on Yotta end user funds, causing a shortfall. Yotta pleads that at least two categories of fees and

---

[1] During the meet and confer, Yotta proposed to narrow RFP 36 and to make it subject to a custodian-limitation. Yotta's proposal, which follows, remains acceptable to Yotta: (1) Documents sufficient to show the amount of funds transferred and the accounts from and to which they were transferred; (2) Documents sufficient to show the processes, procedures, steps, and actions that were utilized to migrate the funds; and (3) All communications concerning (a) the processes, procedures, steps, and actions that should have been utilized to properly migrate the funds (including but not limited to ensuring the correct amount of funds were migrated), (b) the failure utilize any of the processes, procedures, steps, or actions in (a), (c) the determination as to which FBOs held Mercury end user funds prior to the migration, (d) the transfer, allocation or re-allocation of Mercury end user funds to particular FBO's in connection with the migration, (e) the effect of the migration on (i) any FBO account, (ii) end users of non-Mercury fintech(s) or their funds, or (iii) the Synapse ecosystem, (h) any shortfall in any end user funds or FBO funds resulting from or relating to the migration, (f) any discrepancies or inaccuracies in records relating to or affecting the migration, (g) any suggestion, allegation, claim, or concern that too much money was migrated, or (h) any issues, concerns, problems, or complaints regarding the migration raised by Synapse, any fintech, any bank, or any employee or agent of Evolve.

charges were improperly debited from FBO's containing user funds: Account Analysis Charges and Tabapay Fees.  However, given the massive shortfall in funds and the lack of transparency into Evolve's withdrawals from and mismanagement of customer funds, Yotta also seeks to understand whether there were any other fees charged to or debited from the relevant FBO accounts that were not authorized by end users.

Although Evolve has agreed to produce certain fee-related documents, Evolve has refused to produce communications with anyone concerning any other unauthorized fees or charges except for communications with Synapse.  Evolve has refused to produce internal communications regarding any other unauthorized fees or charges and has also refused to produce communications with other banks or fintechs concerning such unauthorized charges.  Internal communications are plainly relevant, particularly given that Evolve has agreed to produce any responsive communications with Synapse. Communications with third parties are also relevant; because the FBO accounts contain comingled funds, another fintech or bank may have identified unlawful charges or fees in a shared FBO account that would impact Yotta end users.  With respect to the burden, to the extent Evolve was not unlawfully charging any other fees to end user's FBO accounts, this Request will result in the production of a limited number of documents, and possibly no documents beyond those that are responsive to other Requests.  To the extent Evolve was unlawfully charging other fees, those documents are highly relevant and the burden of producing them is outweighed by their significance.

Accordingly, in addition to the documents Evolve has agreed to produce, it should be ordered to produce: all communications within Evolve, and between Evolve and any bank, fintech company, or payment recipients concerning any all amounts (other than withdrawals or payments initiated by an end user) that were applied, charged to, or debited from any (1) Synapse-related FBO account, (2) Synapse end user account, or (3) Synapse end user funds.

## II.     Defendant's Section

Despite Evolve agreeing to produce the documents requested in RFP Nos. 34 and 35, Yotta refuses to accept Evolve's proposal and demands that Evolve agree to produce documents beyond the plain language of  the requests.  Yotta's request should be denied.

Evolve has agreed to produce the documents sought by RFP No. 34.  RFP No. 34 seeks "All documents and communications relating to Defendant's contributions to and withdrawals from reserve funds relating to FBO accounts, including but not limited to any accounts related to Synapse End Users."  In the Parties' August 4, 2025 joint discovery letter, "Plaintiff agree[d] to limit these Requests to transactions related to Synapse users, which includes Plaintiff's users." ECF No. 74 at 3. Hoping to avoid the need to further burden the Court with this dispute—and despite the request's facial overbreadth in seeking "all documents and communications," *see In re Yosemite Nat'l Park Hantavirus Litig.,* 2016 WL 5335550, *5 (N.D. Cal. Sept. 23, 2016) (denying motion to compel documents where propounding party's request for "all documents" is "broad and not tailored to records that would actually be relevant")—Evolve agreed in good faith "to produce all documents and communications relating to Evolve's contributions to and withdrawals from reserve funds relating to FBO accounts related to Synapse End Users to the extent such documents exist, are within Evolve's possession, custody, or control, and are uncovered after a diligent search and reasonable inquiry[,]" i.e., exactly what the request (as modified) asks for.  Accordingly, there is nothing to compel at this time.

Yotta, however, refuses to take "yes" as an answer and contends it is entitled to "all documents and communications" relating to *any* withdrawal or contribution from the two Synapse

reserve accounts. But that is not what the request asks for—it specifically limits the "contributions to and withdrawals from reserve funds **relating to FBO accounts**[.]" Yotta now contends that the "relating to FBO accounts" modified the "reserve funds" instead of "contributions to and withdrawals from" and thus it should be entitled to "all documents and communications" related to the two Synapse reserve accounts. But neither Synapse reserve accounts "relate[s] to" any FBO account." Rather, as explained in the Master Bank Service Agreement between Synapse and Evolve, the Program Manager Reserve Account(s) (i.e., the Synapse reserve accounts) were required to provide security for Evolve, not end users. Accordingly, under Yotta's new proffered interpretation of "relating to FBO accounts," there would be no responsive documents. But that is not Evolve's position; rather, Evolve has agreed to produce all documents and communications relating to contributions and withdrawals to the two Synapse reserve accounts that relate to the Synapse FBO accounts. These are the only categories of documents that even arguably have tangential relevance to this case. Yotta misstates Evolve's position contending that it will only produce documents related to two transactions. Rather, Evolve has agreed to review and produce all documents and communications relating to any withdrawal or contribution that is related to the Synapse related FBO accounts. If there are additional transactions that relate to the FBO Accounts, Evolve will produce them.

Accordingly, there is simply no reason to compel any additional documents as any contributions or withdrawals from the Synapse Reserve accounts that do <u>not</u> relate to the Synapse FBO accounts (i.e., the bucket of transactions for which Yotta seeks **all documents and communications**) are irrelevant to Yotta's claims and are thus disproportionate to the needs of the case. *See Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570 (2012) ("'All encompassing' production requests do not meet Rule 34(b)(1)(A)'s reasonably particularity requirement, *in re Asbestos Products Liability Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009), and discovery rules do not allow a requesting party to 'engage in the proverbial fishing expedition, in the hope that there *might* be something of relevance[.]") (quoting *Tompkins v. Detroit Metropolitan Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012)).

It is the same situation for RFP No. 35. RFP No. 35 asks for "[d]ocuments sufficient to show all transactions involving reserve funds relating to FBO accounts, including but not limited to any accounts related to Synapse End Users." Evolve "agree[d] to produce documents sufficient to show all transactions involving reserve funds relating to FBO accounts for Synapse end users or Synapse Brokerage." Again, exactly what Yotta requested (as modified). But Yotta demands an entire accounting of the two Synapse reserve accounts without tying that demand to its actual request or its claims in the case, and thus should be denied for the same reasons that the Court should deny Yotta's request as to RFP No. 34.

As drafted, RFP No. 36 seeks "All documents and communications relating to the 2023 migration of Mercury Technologies, Inc. funds off of Synapse's systems and/or platform." During the hearing regarding the Parties' discovery dispute, the Court advised that the request was facially overbroad and should be narrowed. As a reminder, the only purported relevance that the Mercury migration has to this case—is the wholly unsupported and outlandish allegation that Evolve over-migrated $50 million from the Synapse related FBO Account. Again, Yotta does not allege, nor could it, that the Yotta End Users were ever assessed a fee based on this alleged over-migration; nor does it allege that Evolve refused to return Yotta end user funds as a result, which should make this allegation wholly irrelevant to any of Yotta's claims. Nonetheless, in light of the Court's guidance that it believed that some narrowed discovery on the Mercury migration was in scope, Evolve proposed to produce the final forensic audit report of the Mercury migration that was

JOINT DISCOVERY LETTER:
NO. 3:24 CV-06456-TLT

conducted by an **independent third party auditing firm**, and then the Parties could revisit this request if necessary, in the event that, after reviewing the report, Yotta still believed it needs further documents. Yotta rejected that offer outright and continued to demand effectively a re-phrased demand of all documents and communications related to 2023 Mercury migration (by asking for "all communications" related to twelve different broad categories). Yotta's refusal to even review the third party audit report before determining if these additional documents are necessary suggests bad faith and its continued instance on unduly burdensome, overbroad, and disproportionate discovery related to the Mercury migration should be denied.

Yotta again misrepresents Evolve's position and the procedural history. Evolve has and continues to believe that discovery into the Mercury migration is irrelevant to Yotta's claims and unduly burdensome and overbroad and it resisted any discovery on those grounds. In light of this Court's guidance, Evolve is willing to produce an independent third party auditing report—not a created-for-litigation expert report—that evaluated the Mercury migration. Yotta should be required to review that report before proceeding with this additional discovery. Evolve has also shared with Yotta, including in the prior joint letter, the significant burden associated with reviewing, redacting, and producing the requested documents. If the Court believes a further burden declaration would assist it in its evaluation of this request, Evolve respectfully requests leave to file such a declaration.

For RFP No. 39, the Parties have narrowed their dispute, but Yotta refuses to relent on its demand that Evolve agree to produce "all documents and communications" related to hypothetical, unknown, and unspecified charges alleged assessed to the FBO accounts. This vague and facially overbroad request should be denied.

In the FAC, Yotta challenges the assessment of TabaPay fees and Account Analysis Fee to the FBO Accounts. At the hearing on the Parties' joint discovery letter, Evolve understood Magistrate Judge Hixson to indicate that some discovery on these fees would be appropriate.[2] Accordingly, again despite the facial overbreadth of RFP Nos. 40 and 42, Evolve agreed to produce **all documents and communications** relating to debits from the FBO Account for either Account Analysis Fee or TabaPay fees to the extent such documents exist, are within Evolve's possession, custody, or control, and are uncovered after a diligent search and reasonable inquiry. Evolve likewise agreed to produce the documents requested in RFP No. 44, which included "**all communications with Synapse** concerning Account Analysis Charges, TabaPay, **and/or any payment from or debit of FBO accounts related to Synapse end users**" to the extent such documents exist, are within Evolve's possession, custody, or control, and are uncovered after a diligent search and reasonable inquiry." Despite Evolve's significant compromise, Yotta demands that Evolve also produce all communications related to any fees, charges, or withdrawals from a Synapse-related FBO account even though it has not identified any other type of fee that was allegedly improper. As explained to Yotta, it is not even clear how Evolve would collect or search for such communications given their hypothetical and undefined nature. Yotta's request for RFP No. 39 should be denied. *See Gilead Scis. v. Merck & Co., Inc.*, 2016 WL 146574, at *1 (N.D. Cal. Mar. 17, 2014) ("No longer is it good enough to hope that the information sough might lead to the discovery of admissible evidence.").

---

[2] Evolve continues to contend (as explained in the Motion to Dismiss briefing and the Parties' joint discovery letter) that even if Evolve did assess those fees to the FBO Accounts, it would not show any wrongful conduct by Evolve and thus any discovery as to these fees is disproportional to the needs of the case.