UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YOTTA TECHNOLOGIES INC.,

Plaintiff,

v.

EVOLVE BANK & TRUST,

Defendant.

Case No.  24-cv-06456-TLT   (TSH)

**DISCOVERY ORDER**

Re: Dkt. Nos. 133, 137, 139

Fact discovery closed on December 19, 2025.  ECF No. 113.  In the last four days of fact discovery, the parties filed the present disputes.  ECF Nos. 133, 137, 139.

**A.      ECF No. 133**

Yotta moves to compel every document that Evolve withheld based on the bank examination privilege and/or as confidential supervisory information (together, "privileged") that include discussion of Evolve's insufficient controls, policies, or practices with respect to its Open Banking Division ("OBD").[1]  Evolve is withholding over a thousand documents as privileged.  ECF Nos. 134-1 & 134-2.  Yotta has requested that the Federal Reserve Board ("FRB") and the Arkansas State Bank Department ("ASBD") waive the privileges (which are owned by them, not the bank) and served them with this motion to compel.  ECF Nos. 133 at 7, 133-5, 133-6.  Neither regulatory agency has filed anything in response to this motion to compel.  Evolve opposes the motion.

---

[1] Yotta also argues that many of the documents are likely not privileged in the first place. However, Yotta does not say which ones or provide reasons why any particular document is not privileged.  Nor does Yotta ask the Court to review a set of exemplar documents *in camera* to determine their privileged status.  Accordingly, Yotta's assertion that many of the documents may not be privileged in the first place looks like a rhetorical point that leads in to the relief Yotta is really asking for, which is for the Court to overrule the qualified privileges.

United States District Court
Northern District of California

The privileges at issue are qualified, and to determine whether to overrule them, "courts generally apply a balancing test of five factors: (1) The relevance of the privileged information; (2) The availability of other information; (3) The seriousness of the litigation; (4) The role of the government in the litigation; and (5) The possible chilling effect of disclosure." *In re B of I Holding, Inc. Secs. Litig.*, 2022 WL 507663, *6 (S.D. Cal. Feb. 18, 2022). The Court applies these factors here.

### 1.      Relevance

The privileged information is relevant. On June 11, 2024, Evolve and its parent company entered into a consent decree with the FRB and ASBD. The consent decree stated that the regulators identified deficiencies in Evolve's risk management of OBD and other deficiencies in reports dated August 11, 2023, August 30, 2023, and January 10, 2024. The consent decree required Evolve to submit a written plan that would broadly address compliance and risk in Evolve's OBD, including, among many other things, written policies and procedures to manage compliance and fraud risks with each fintech partner, product, program, service, business line or customer.

Yotta's program was run through Evolve's OBD, and as you know, Yotta alleges fraud. If you take a look at paragraph 202 in Yotta's First Amended Complaint (ECF No. 57), you'll see that many of the alleged frauds were committed in the years leading up to the regulators' reports, but also some of them took place after some or all of the reports (e.g., "The continuous representations Evolve made to Yotta via the Synapse API from 2020 to May 11, 2024 on a real-time basis that purported to state each and every transaction on the account and the account balances"; "Written representations by Evolve President Word on or about September 25, 2023 in an email to Moelis that problems with Synapse were merely the result of 'some contractual issues with Synapse' that were 'being handled' in a manner that would 'protect end users'"; "Written representations by Lenoir, on or about October 3, 2023, in an email to Moelis, that problems with Synapse were merely the result of 'some contractual issues with Synapse,' and that Yotta could 'transition to another bank' should it or its users desire to do so"; "Evolve's written representation, sent by Word on or about May 11, 2024 that it was 'maintain[ing] the integrity and security of end

user accounts.'").  Further, Evolve is invoking privilege over documents going back to 2018, ECF No. 134-1 (first two entries).  Accordingly, it is very unlikely that Evolve first learned of the widespread deficiencies in its OBD on the day the regulators issued their reports.

Yotta thinks that the privileged documents will show that Evolve *knew* that its many representations to Yotta over the years concerning the soundness of its banking operations were false.  The Court agrees with Yotta.  Accordingly, the documents are relevant, and this factor favors disclosure.

### 2.    Availability of Other Information

Yotta has been able to take full discovery in this case.  This factor counts against Yotta. Yotta does not articulate any area of relevant discovery that it was not able to explore through the regular discovery process.  Yotta argues that "[t]he Consent Decree indicates that the Bank Examinations found serious problems with Evolve's OBD."  But "it is hard to reconcile plaintiff's assertions that the Bank's misconduct was 'widespread' and evidenced *only* by communications with the [regulator]." *In re B of I Holding*, 2022 WL 507663, *6 (emphasis added).  Yotta argues that "this information is not available elsewhere as Evolve appears to have withheld all documents, including internal discussions, related to the bank examinations."  Of course the withheld documents are not themselves available elsewhere; they were withheld.  The relevant inquiry is whether factual information that is relevant to the case is contained only in the privileged documents.  Yotta has not made or attempted to make that showing.

### 3.    Seriousness of the Litigation

This factor does not favor disclosure.  This lawsuit is serious to Yotta, of course, because it concerns the collapse of its business.  But Yotta is not a bank, and this lawsuit is not about a bank collapse.  It is a dispute between two private parties where money damages are the remedy. *See In re Wilmington Trust Secs. Litig.*, 2016 WL 9753979, *10 (D.Del. Aug. 16, 2016) (" In *Shirk*, the court determined that an ERISA action between private litigants where money damages were the remedy did not rise to the level of seriousness which would require production of confidential bank examination materials.  The failure of a bank, however, has more widespread implications than an ERISA action between two private parties, and the differences in the nature of the claims

United States District Court
Northern District of California

preclude a meaningful comparison.").

### 4.    Role of the Government

The government is not a party to this case and does not have a direct interest in its outcome.  "The Court finds that this factor weighs against disclosure."  *In re B of I Holding*, 2022 WL 507663, *7.

### 5.    Chilling Effect

The broad sweep of Yotta's motion seems to maximize the chilling effect it would have. Yotta says it is not moving to compel every privileged document, only the ones that include discussion of Evolve's insufficient controls, policies, or practices with respect to its OBD.  But given the subject matter of the consent decree, the Court thinks that is not likely much of a limitation at all.  Yotta is basically moving to compel every communication with the regulators over a span of several years.  This broad disclosure is more likely to have a chilling effect than a narrow disclosure of just a few documents.

### 6.    Conclusion

Overall, the weight of the factors counsels against overruling the qualified privileges. Accordingly, Yotta's motion to compel is **DENIED**.

## B.    ECF No. 137

Yotta moves to compel three additional hours of deposition time with Evolve's Rule 30(b)(6) designee, Christopher Vendetti.  Evolve opposes the motion.  The Court has reviewed the deposition transcript and concludes that Evolve's counsel's many speaking objections and efforts to coach the witness disrupted the deposition and warrant three more hours of testimony. Accordingly, Yotta's motion is **GRANTED**.

## C.    ECF No. 139

Yotta moves to compel four categories of documents.

### 1.    Personally Identifying Information

Evolve has been withholding certain documents on the ground that they include PII, such as bank account numbers, dates of birth, Social Security numbers, home addresses and so on. Similarly, Evolve has redacted documents on the same ground.  Yotta claims that "[t]he parties

United States District Court
Northern District of California

4

United States District Court
Northern District of California

now agree" that Evolve should be ordered to produce all of these documents in native format, and that the only dispute is whether the protective order in this action should be amended to add an attorneys' eyes only provision. But it seems that the parties do not agree about this because Evolve says that Yotta's request should be denied. In Evolve's view, the parties were in the middle of a meet and confer about account statements and transaction data when Yotta filed the instant request for all PII in every responsive document.

The Court is not going to order this. As you will recall, document production in this case was significantly delayed. The Court's October 31, 2025 order set a November 10, 2025 substantial completion deadline. ECF No. 97. One of Evolve's arguments concerning what that deadline should be was its burden in redacting PII. Evolve said: "given the way the Synapse-related accounts were structured, there is a significant PII in the potentially responsive documents for non-Yotta customers that require redaction. . . . Evolve is a federally regulated and Arkansas-chartered bank and must comply with federal and state privacy laws." ECF No. 95 at 3 (emphasis omitted). The Court's order observed that " Evolve says there is significant PII in the potentially responsive documents that needs to be redacted under federal and state privacy laws," ECF No. 97 at 1.

So, Yotta knew Evolve would be redacting PII. Yotta then waited until 39 days after the substantial completion deadline, and on the last day of fact discovery filed this motion to force Evolve to produce all the PII. While this motion is technically compliant with the deadline to file a discovery motion, *see* Civ. L.R. 37-3, redoing a significant part of Evolve's document production like this is not proportional to the needs of the case, especially when Evolve made clear that redacting the PII in the first instance required a lot of work. Discovery motions brought at the end of fact discovery should be about cleaning up loose ends, not redoing things from the beginning. This is especially true when Yotta knew that Evolve would be redacting PII in its document production and waited until long after that production was made to file this motion. Yotta's motion to compel is **DENIED**.

### 2.    FDIC Insurance

Next, Yotta moves to compel "documents sufficient to show (a) the amount of Yotta and

Synapse end user funds that was FDIC insured on a daily basis and (b) all representations to the FDIC regarding balances of Yotta and Synapse end user funds." Yotta says these documents are responsive to RFPs 25, 26, 27, 47 and 56. However, the Court does not think they are responsive to those RFPs. Yotta's motion to compel is **DENIED**.

### 3.    Ankura

Yotta also moves to compel "key documents concerning Ankura's 'reconciliation,'" specifically, "(a) the calculations used to generate the Spreadsheet, (b) documents concerning the logic and reasoning behind deciding which balance (i.e. (1), (2), or (3) above) would be paid to each user, (c) the code or matching logic used by Ankura to classify Synapse transaction records; and (d) any presentations made to the CFPB." Yotta does not identify any request for production these materials are responsive to. Accordingly, its motion to compel is **DENIED**.

### 4.    Linked Documents

Finally, Yotta moves to compel the documents that are hyperlinked in the produced documents listed in ECF No. 139-2. The Court agrees with Evolve that a hyperlink relationship (meaning the document, such as an email, contains a link to another document) does not by itself mean the linked document should be treated as an attachment and produced. *See In re Meta Pixel Healthcare Litig.*, 2023 WL 4361131, *1 (N.D. Cal. June 2, 2023) ("[T]he ESI protocol should make clear that hyperlinked documents are not treated as conventional attachments for purposes of preserving a 'family' relationship in production."); *Nichols v. Noom Inc.*, 2021 WL 948646, *4 (S.D.N.Y. March 11, 2021) ("[T]he Court does not agree that a hyperlinked document is an attachment.").

However, sometimes it may be appropriate to produce a linked document, depending on the nature of the produced document. *See In re Meta Pixel Healthcare Litig.*, 2023 WL 4361131, *1 ("[T]he Court anticipates that for some documents, it will be important to collect (or attempt to collect) hyperlinked documents and associate them with the underlying ESI in which the links appear. In such circumstances, the parties should consider reasonable requests for production of hyperlinked documents on a case-by-case basis. Such requests should not be made as a matter of routine."). Here, Yotta gestures at the documents listed in ECF No. 139-2 and proclaims them to

United States District Court
Northern District of California

be "important."  This is not a sufficient case-by-case showing.  Therefore, Yotta's motion to compel is **DENIED**.

    **IT IS SO ORDERED.**

Dated: January 22, 2026

_____
THOMAS S. HIXSON
United States Magistrate Judge