ARAVIND SWAMINATHAN (PRO HAC VICE)
aswaminathan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone:    +1 206 839 4300
Facsimile:    +1 206 839 4301

MARC R. SHAPIRO (PRO HAC VICE)
mrshapiro@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone:    +1 212 506 3546
Facsimile:    +1 212 506 5151

SARAH DAVIS (STATE BAR NO. 275145)
sdavis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

Attorneys for Defendants
Evolve Bank & Trust

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOTTA TECHNOLOGIES INC., | Case No. 3:24 CV-06456-TLT |
| Plaintiff, | **EVOLVE BANK & TRUST'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(7)** |
| v. | |
| EVOLVE BANK & TRUST, | Date:          February 10, 2026 |
| Defendants. | Time:          2:00 p.m. |
| | Courtroom: 9, 19th Floor |
| | Judge:        Hon. Trina L. Thompson |
| | Trial Date: June 21, 2027 |
| | Date Action Filed:  Sept. 13, 2024 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

ARGUMENT .................................................................................................................. 3

    A.    Synapse Is a Necessary Party. ................................................................. 3

        1.    Synapse is a necessary party even if it qualifies as a joint tortfeasor. ........ 3

        2.    Synapse is a necessary party even if it did not expressly claim an interest via statement to Yotta's counsel .................................................. 5

        3.    Synapse is a necessary party even though Yotta has not asserted contract claims. .............................................................................. 7

        4.    Synapse is a necessary party even though it is not currently operating ............................................................................................. 8

    B.    Joinder is Not Feasible Because It Would Destroy Diversity ............................. 10

    C.    Synapse Is Indispensable ................................................................................. 10

    D.    The Court should not credit Yotta's irrelevant and inappropriate facts ............... 13

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. State,*
   547 F.3d 962 (9th Cir. 2008) ................................................................. 8

*Christian v. Monaco Coach Corp.,*
   No. SA CV 08-00141, 2009 WL 1574553 (C.D. Cal. May 14, 2009) ................................... 8

*Crawford v. XTO Energy, Inc.,*
   509 S.W.3d 906 (Tex. 2017) ................................................................. 6

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,*
   276 F.3d 1150 (9th Cir. 2002) ................................................................. 6

*E.E.O.C. v. Peabody West Coal Co.,*
   610 F.3d 1070 (9th Cir. 2010) ................................................................. 11, 12

*Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.,*
   103 F.3d 888 (9th Cir. 1996) ................................................................. 9, 10

*In re Toyota Motor Corp.,*
   785 F. Supp. 2d 883 (C.D. Cal. 2011) ................................................................. 4

*Int'l Bus. Machs. Corp. v. Conner Peripherals, Inc.,*
   No. 93-cv-20591-RMW, 1994 WL 409493 (N.D. Cal. Jan. 28, 1994) ............................... 14

*Laker Airways, Inc. v. Brit. Airways, PLC,*
   182 F.3d 843 (11th Cir. 1999) ................................................................. 4, 5

*Lone Star Indus, Inc. v. Redwine,*
   757 F.2d 1544 (5th Cir. 1985) ................................................................. 10

*Marder v. Lopez,*
   450 F.3d 445 (9th Cir. 2006) ................................................................. 13

*Network Appliance Inc. v. Sun Microsystems Inc.,*
   No. C-07-06053, 2008 WL 4712604 (N.D. Cal. Oct. 22, 2008) ......................................... 11

*Owen Equip. & Erection Co. v. Kroger,*
   437 U.S. 365 (1978) ................................................................. 2, 11

*Philadelphia Solar LLC v. Sologistics LLC,*
   No. 24-cv-00676-SHK, 2024 WL 5372779 (C.D. Cal. Oct. 31, 2024)............................... 14

*Phillips v. Sun Life Assurance Co. of Canada,*
   641 F. Supp. 3d 453 (S.D. Ohio 2022) ................................................................. 6

*Polanco v. H.B. Fuller Co.,*
   941 F. Supp. 1512 (D. Minn. 1996) ................................................................. 4

*Salt River Project Agric. Improvement & Power Dist. v. Lee,*
   672 F.3d 1176 (9th Cir. 2012) ................................................................. 13

*Sino-US Inv. Mgmt. Consultant Ltd. v. Rhee,*
   No. CV-20-08597, 2021 WL 5020469 (C.D. Cal. Mar. 9, 2021) ............................... 8, 9, 13

*SmithKline Beecham Corp. v. Apotex Corp.,*
   439 F.3d 1312 (Fed. Cir. 2006) ................................................................. 11

*SSI Inc. v. Ferry,*
   No. CV 21-2073, 2021 WL 9315372 (C.D. Cal. July 28, 2021)........................................ 6

*Stiefel & Co. v. Blitz,*
    1993 WL 526386 (S.D.N.Y. Dec. 14, 1993) ........................................................................ 10

*Stoer Constr. Inc. v. Benson Sec. Sys. Inc.,*
    No. CV-22-00400, 2022 WL 4017412 (D. Ariz. Sept. 2, 2022) ........................................... 8

*Travelers Prop. Cas. Co. of Am. v. Levine,*
    No. 17-cv-07344, 2018 WL 3377692 (N.D. Cal. July 11, 2018) ........................................ 11

*United States v. Bowen,*
    172 F.3d 682 (9th Cir. 1999) ............................................................................................... 6

*Ward v. Apple Inc.,*
    791 F.3d 1041 (9th Cir. 2015) ................................................................................. 1, 4, 5, 8

*White v. Univ. of California,*
    765 F.3d 1010 (9th Cir. 2014) ............................................................................................. 6

*Wilson v. Metals USA, Inc.,*
    No. CIV. S-12-0568, 2012 WL 5932990 (E.D. Cal. Nov. 27, 2012) .................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(7) ............................................................................................. 9, 13, 14

Fed. R. Civ. P. 14 ....................................................................................................... 11, 12

Fed. R. Civ. P. 19 ......................................................................................................... passim

EVOLVE BANK & TRUST'S REPLY ISO
12(B)(7) MOTION TO DISMISS
3:24 CV-06456-TLT

Since its inception, Yotta has predicated this lawsuit on claims that Synapse behaved unlawfully—allegations that, if credited by this Court, must be considered with Synapse as a party. That is because Yotta's allegations here materially impact Synapse's interests and defenses in ongoing and future investigations, and rendering judgment in this action without Synapse as a party to this action will prejudice those interests as well as Evolve. Yet Yotta declined to name Synapse as a defendant to manufacture diversity jurisdiction, and such tactics run afoul of Rule 19. As Evolve's Motion ("Mot.") established: (1) Synapse's interest in defending itself makes it a necessary party here; (2) joinder is not feasible because, taking the First Amended Complaint ("FAC") at face value, it would destroy diversity jurisdiction; and (3) Synapse is indispensable in light of the prejudice its exclusion would cause. If Yotta wishes to pursue these claims, it can do so in another Court; just not this one.

Yotta's Opposition Brief ("Opp.") tries to escape Rule 19 by inventing bright-line legal rules that defy the governing case law. Several of those invented rules place undue restrictions on the meaning of a necessary party. Yotta first asserts that an alleged joint tortfeasor cannot qualify as necessary "absent extraordinary circumstances." Opp. 7. That is squarely at odds with *Ward v. Apple Inc.*, 791 F.3d 1041 (9th Cir. 2015)—ironically, the decision Yotta cites for support. *Ward* is explicit that joint tortfeasors, like any other nonparties, may well be necessary as long as they have a cognizable interest to the action under Rule 19(a)(1)(B). Yotta next insists that the only way for a nonparty to claim such an interest is to say so expressly in a statement to a party's counsel. But courts have made clear that a nonparty may also claim an interest through prior conduct or actions that affirm its interest, as Synapse did here by not only performing under its contract with Synapse but defending against allegations that it violated its responsibilities to its partners and their end-users. Yotta also argues that a business that is not currently operating cannot be a necessary party. Once more, no court has said that. And Yotta's efforts to paint Synapse as "dead" are procedurally improper, overstated, and irrelevant even on their own terms, as they would not eliminate the interest that Synapse and its former executives retain in defending against investigations of their possible wrongdoing.

Yotta's final faux-legal rule concerns what it means to be indispensable. Evolve's Motion

EVOLVE BANK & TRUST'S REPLY ISO
12(B)(7) MOTION TO DISMISS
3:24 CV-06456-TLT

explained that courts assess that issue by considering four factors: (1) the extent to which a judgment rendered in Synapse's absence might prejudice it or the existing parties; (2) the extent to which any prejudice could be lessened or avoided; (3) whether a judgment rendered in Synapse's absence would be adequate; and (4) whether Yotta would have an adequate remedy if the action were dismissed for nonjoinder. Yotta does not meaningfully dispute that each factor shows Synapse to be indispensable here. Instead, Yotta urges that this Court is categorically foreclosed from deeming Synapse indispensable under Rule 19 and dismissing the case because Evolve could implead Synapse instead, thereby bringing it into the action without destroying diversity jurisdiction. Again, there is no such rule. The Supreme Court held decades ago that "a plaintiff" may not "defeat the statutory requirement of complete diversity by the simple expedient of suing only those defendants who were of diverse citizenship and waiting for them to implead nondiverse defendants." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374-75 (1978). Yotta's argument turns that precedent on its head. And impleader would be unavailable in any event.

Once Yotta's invented legal rules are cleared away, all that remains are unpersuasive and irrelevant complaints about Evolve's litigation conduct. For example, Yotta faults Evolve for not independently seeking discovery from Synapse. But this is Yotta's lawsuit, not Evolve's, and there was no reason to duplicate Yotta's third-party discovery efforts. Yotta then contends that Evolve somehow waited too long to seek dismissal based on Rule 19. Of course, it is black letter law that Rule 19 may be invoked at any time before the conclusion of trial. Nor did Evolve wait; having argued throughout this case that Yotta's lawsuit against Evolve was premised on Synapse's misconduct, Evolve swiftly moved for dismissal on Rule 19 grounds immediately after Synapse emerged from bankruptcy and was no longer immune from suit. Finally, Yotta urges that Evolve somehow conceded that its headquarters are in California, when the Motion simply parrots Yotta's allegation as pled in the FAC.

From the outset, this Court has voiced misgivings about Yotta's tactical exclusion of Synapse. Yotta has declined to change course even with Synapse no longer immune from suit. As a result, this lawsuit runs squarely into Rule 19's prohibitions and must be dismissed.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**ARGUMENT**</u>

**A.      Synapse Is a Necessary Party.**

Yotta cannot dispute that Synapse's allegedly unlawful conduct is the lynchpin of this lawsuit.  As the Motion explained, it was Synapse, not Evolve, that: contracted with Yotta, provided the technological interface between Yotta and Evolve, was responsible for maintaining the ledger documenting the transactions and location of Yotta end user funds, and migrated funds away from Evolve to other banks in October 2023, as part of Synapse's construction of its cash management program.  Mot. 4-5.  Yotta alleges that Synapse acted improperly in fulfilling those obligations and seeks to hold Evolve liable—a legal theory so obviously derivative that the Court *sua sponte* raised concerns that Synapse is a necessary party.  Mot. 6.  Put simply, Yotta has no claim unless it proves that Synapse acted wrongfully.

Yotta also cannot dispute that Synapse faces ongoing governmental scrutiny for the same conduct at issue here.  Just by way of what is public, as the Motion noted, Synapse recently defended itself against an investigation by the Consumer Financial Protection Board, ultimately negotiating a Stipulated Final Judgment Order.  Mot. 5.  Synapse's former executives are currently defending themselves against an action by the Financial Industry Regulatory Authority.  Mot. 6.  In addition, the former Corporate Controller of Synapse received a grand jury subpoena for records and information relating to his work at Synapse.  *See* Notice of Mot. & Mot. for Relief, *In re Synapse Fin. Techs., Inc.*, No. 1:24-bk-10646-MB (Bankr. C.D. Cal. Jan. 21, 2025), ECF No. 482 (motion seeking relief from Synapse bankruptcy automatic stay to authorize payment pursuant to Synapse's D&O insurance policy).  Again, this is only what is publicly known to date.

Unable to contest those facts, Yotta distorts case law to manufacture bright-line legal rules to excuse Synapse's absence from this case.  Each purported rule, however, crumbles under scrutiny.

1.      <u>Synapse is a necessary party even if it qualifies as a joint tortfeasor.</u>

Yotta first suggests *Ward* ruled that "absent extraordinary circumstances, joint tortfeasors

1   are not necessary parties."[1]  Opp. 7.  *Ward* said no such thing.  It ruled only that, given the nature

2   of joint-and-several recovery in antitrust lawsuits, "an absent antitrust co-conspirator ***generally*** will

3   not be a required party ***under Rule 19(a)(1)(A)*** , which applies only when a party's absence

4   prevents the court from 'accord[ing] complete relief among existing parties.'"  791 F.3d at 1049

5   (emphasis added).  *Ward* emphasized that joint tortfeasor status has no such impact on whether "an

6   absent antitrust coconspirator" is "a required party under Rule 19(a)(1)(B)(i), the purpose of which

7   is to protect the interests of absent parties."  *Id.*  The Ninth Circuit could not have been clearer: "an

8   absent party's role as a joint tortfeasor does not preclude it from having an interest in the action

9   that warrants protection."  *Id.*  That is the "black letter law" on this issue, and it applies equally to

10  the joint liability of "agents" and "principals."  Opp. 7-8.

11         *Ward*'s actual ruling is entirely consistent with the cases Evolve cited that classified a

12  purported joint tortfeasor as a necessary party on the strength of its interest in the subject of the

13  lawsuit.  Mot. 10 (citing *Laker Airways, Inc. v. Brit. Airways, PLC*, 182 F.3d 843, 847-48 (11th

14  Cir. 1999); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 906 (C.D. Cal. 2011); *Polanco v. H.B.

15  Fuller Co.*, 941 F. Supp. 1512, 1521 (D. Minn. 1996)).  Yotta responds by noting that one of those

16  cases (*Laker Airways*), along with a few other authorities cited in the Motion, found "an Indian

17  tribe, the United States, a State, or other sovereign authority … to be necessary parties in an action

18  that implicated the non-party's sovereign interests."  Opp. 8.  That makes no difference.  For one

19  thing, *Laker Airways* ruled that a "private English corporation," not a sovereign, was a necessary

20  party.  182 F.3d at 845.  And in any event, all of these cases apply the same universal rule: ***any***

21  absent joint tortfeasor is a necessary party under Rule 19(a)(1)(B)(i) if it establishes an interest in

22  the action.  The fact that sovereign entities have met that standard in certain circumstances does not

23  mean that private entities cannot meet it in others (as they did in *Laker Airways*, *Toyota*, and

24  *Polanco*).

25         Indeed, *Ward* itself demonstrates why Synapse has a cognizable interest in this lawsuit

26  _____

27  [1] Evolve has addressed many times why Yotta's arguments that Evolve acted jointly with Synapse, conspired with Synapse, or that Synapse was its agent all fail.  *See, e.g.*, Dkt. 27 (Evolve Motion to Dismiss initial complaint), at 17-19; Dkt. 65 (Evolve Motion to Dismiss First Amended Complaint),

28  at 2-6, 10-18, 22, n.13.

despite any purported joint tortfeasor status.  The Ninth Circuit acknowledged that an alleged joint tortfeasor could be a necessary party if a lawsuit threatens it with concrete "regulatory" repercussions.  791 F.3d at 1052.  That was the case in *Laker Airways*, where the private nonparty corporation's "appointment as coordinator" of airline services "would be withdrawn" by regulators if it were found to have behaved wrongfully.  *Id.* (citing *Laker Airways*, 182 F.3d at 846-48).  *Ward* found that there was no comparable risk of "regulatory scrutiny" only because the defendant there submitted no "evidence that law-enforcement or regulatory agencies are presently scrutinizing" the relevant transactions.  *Id.*  On that sparse record, the Ninth Circuit "decline[d] to speculate whether the outcome of this case will impact agencies' enforcement decisions."  *Id.*  This case is a stark contrast:  Synapse and its former executives undisputedly ***are*** defending themselves against enforcement actions, and the potential impact of this Court's findings of wrongdoing demands no speculation.

Yotta thus gets nowhere by arguing that a nonparty's active participation in the events underlying a lawsuit does not ***automatically*** render it a necessary party.  Opp. 9.  All *Ward* said on that point is that even where a nonparty is "portrayed … as the central player in the alleged antitrust conspiracy," the defendant is still required to "identify the specific legally protected interests" that "qualify for protection under Rule 19(a)(1)(B)(i)."  791 F.3d at 1050.  That is true, as far as it goes.  But the centrality of a nonparty's purported wrongdoing in a complaint may still ***give rise to*** concerns about specific legally protected interests, including by threatening the sorts of regulatory repercussions laid bare here.

2.    <u>Synapse is a necessary party even if it did not expressly claim an interest via statement to Yotta's counsel.</u>

Yotta next invents the erroneous bright-line rule that a nonparty may "claim[ ] an interest relating to the subject of the action," Rule 19(a)(1)(B), only by stating its interest expressly to a party's counsel.  Opp. 10.  Yotta asserts that "after this action was filed," its counsel "had a telephone call with the Synapse Trustee's counsel," and that the Trustee's counsel did not (at that point "or subsequently") "express or claim any interest in the instant action" to Yotta's counsel.  Opp. 4 (citing Mandel Decl. ¶¶ 14-15.)  On that basis alone, Yotta insists that "Synapse never

1    claimed an interest in the case" for purposes of Rule 19(a)(1)(B).  Opp. 10.

2           Yotta's reading of Rule 19 is far too narrow.  A nonparty like Synapse must claim a legal

3    interest, and that interest must relate to the lawsuit where dismissal is sought.  But there is no

4    requirement that the nonparty *directly voice* its legal interest to a party's counsel—or, indeed, to

5    anyone.  Courts have repeatedly held that a nonparty may claim a relevant legal interest through

6    *prior conduct* alone.  Some "absent parties" have "expressly claimed an interest in the subject of

7    the litigation through their deeds and leases," which claimed rights later implicated by litigation.

8    *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 913 (Tex. 2017); *see, e.g.*, *Dawavendewa v. Salt*

9    *River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1156 (9th Cir. 2002) (nonparty

10   expressly asserted interest "simply by virtue of being a signatory to the lease").  Others have done

11   so by "publicly listing … assets" that a lawsuit later put at issue.  *Phillips v. Sun Life Assurance*

12   *Co. of Canada*, 641 F. Supp. 3d 453, 458 (S.D. Ohio 2022).  These nonparties were not required to

13   make an express statement to any party's counsel.  It was enough that their conduct in related

14   circumstances established their claims to relevant legal interests.[2]

15          The same is true for Synapse.  The company and its former executives have defended, and

16   continue to defend, against governmental actions concerning the propriety of the exact conduct at

17   issue in this lawsuit.  There is no need to "hypothesize that [their] interests" in defending themselves

18   from regulatory scrutiny "will be impaired if not joined."  *SSI Inc. v. Ferry*, No. CV 21-2073, 2021

19   WL 9315372, at *4 (C.D. Cal. July 28, 2021).  Findings here that Synapse acted wrongfully—and

20   even did so knowingly—would  obviously impact Synapse's interest in defending itself against

21   current and future regulatory actions.  *See id.* (nonparties "claim an interest in the lawsuit by nature

22   of the fact that the lawsuit expressly alleges that [they] violated Russian-law duties"); Mot. 8

23   ("Rule 19 is designed to protect 'a party's right to be heard and to participate in adjudication of a

24   claimed interest'" (quoting *White v. Univ. of California*, 765 F.3d 1010, 1026-27 (9th Cir. 2014))).

25   That distinguishes this case from *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999), where

26   the nonparty failed to "claim an interest" through *either* prior conduct or express statement.  Unlike

27

28   ---
     [2] Evolve can refile this motion or amend it should the Court wish to make factual findings based
     on the factual discovery that has occurred.

     EVOLVE BANK & TRUST'S REPLY ISO
     12(B)(7) MOTION TO DISMISS
     3:24 CV-06456-TLT

the nonparty in *Bowen*, Synapse and its former executives are actively defending against concrete governmental actions related to the same conduct that Yotta seeks to prove was wrongful, and that is more than enough to establish Synapse's claimed interest.

Indeed, that a nonparty may claim an interest through conduct in this way is essential to Rule 19's function. The rule is designed to be invoked by a named defendant, including one—like Evolve—that has improperly been hauled into federal court through the manipulation of diversity jurisdiction. It would make no sense for such a named defendant, and ultimately the Court, to be beholden to whether the nonparty has spoken particular words to a party's counsel. That would open the door for exactly the sort of jurisdictional manipulation Rule 19 serves to foreclose, which is why the inquiry hinges instead on the substance of the nonparty's legal interests.

> 3. <u>Synapse is a necessary party even though Yotta has not asserted contract claims.</u>

Yotta next contends that Synapse lacks an interest under Rule 19 because "this is a tort case against Evolve, not a contract case against Synapse." Opp. 12. That is wrong for several reasons. To begin with, it is circular: The only reason this lawsuit lacks contract claims against Synapse is that Yotta omitted Synapse as a defendant in the hope of manufacturing diversity jurisdiction. Rule 19 guards against that sort of tactical pleading. Put simply, Yotta's refusal to frame this action as "a contract case against Synapse" is a reason to ***apply*** Rule 19, not set it aside.

In any event, Evolve has never argued that Synapse is a necessary party because the case involves contract claims (it plainly does not). *See* Mot. 13 (acknowledging that "Yotta has not formally brought a breach of contract claim here"). The Motion instead cited Synapse's contracts with Yotta and Evolve to demonstrate how central Synapse is to Yotta's claims against Evolve, and how exposed Synapse would be to collateral consequences without a seat at the table. Even if Yotta has asserted only tort claims against Evolve, the factual predicate for those claims is Synapse's purportedly wrongful conduct, which would have violated its contractual duties in several ways: failing to (a) operate an accurate interface between Yotta and Evolve, (b) maintain an accurate ledger documenting the transactions and locations of Yotta end user funds, and (c) account for the movement of customer funds appropriately across Evolve and various other banks. *See, e.g.*, Mot.

1    4-6, 11-13. Adjudicating Yotta's tort claims will inevitably require findings as to whether Synapse

2    is responsible for those failings—and if so, with what state of mind, since Synapse's intent is

3    relevant to several claims against Evolve (including those premised on agency and conspiracy).

4    All of that squarely implicates Synapse's interest in defending itself across ongoing legal and

5    regulatory proceedings.

6         Yotta again mischaracterizes *Ward* on this issue, suggesting it "held that there are only

7    limited circumstances in which a non-party's contract rights can be sufficiently important to render

8    that non-party a necessary one under Rule 19." Opp. 12. *Ward* issued no such holding. It merely

9    noted that prior cases had not "held that an absent party is ***always*** required when the relief sought

10   in an action merely implicates an absent party's contract rights." 791 F.3d at 1053 (emphasis

11   added). So it is not a *per se* rule. But "[a]n interest that 'arises from terms in bargained contracts'

12   may be protected" in all sorts of "circumstances." *Id.* (quoting *Cachil Dehe Band of Wintun Indians*

13   *of the Colusa Indian Cmty. v. State*, 547 F.3d 962, 970 (9th Cir. 2008)) (emphasis added). This is

14   one of those cases: Yotta seeks to establish that Synapse violated, perhaps purposefully, its

15   contractual obligations at a moment when findings to that effect would have direct consequences

16   in ongoing defenses against related regulatory actions. This case presents such a set of facts because

17   it is only Synapse's conduct that is plausibly implicated. *Ward*, on the other hand, concerned

18   primarily the defendant's liability and its affirmative conduct. *Id.* at 1043-44. Here, Yotta's

19   allegations all implicate the absent party's conduct. As another court put it when applying Rule

20   19, "[f]acts discovered and judgments rendered in this case could later be used against [the absent

21   party] in subsequent proceedings." *Christian v. Monaco Coach Corp.*, No. SA CV 08-00141, 2009

22   WL 1574553, at *1-2 & n.1 (C.D. Cal. May 14, 2009).

23         4.    <u>Synapse is a necessary party even if it is not currently operating.</u>

24         Yotta next proposes the bright-line rule that a "non-operating" corporation cannot be a

25   necessary party. Opp. 11. Once more, that is not the law. Courts routinely classify nonparties as

26   necessary even when they are bankrupt, without assessing the exact scope of their financial

27   condition. *See Stoer Constr. Inc. v. Benson Sec. Sys. Inc.*, No. CV-22-00400, 2022 WL 4017412,

28   at *4 (D. Ariz. Sept. 2, 2022); *Sino-US Inv. Mgmt. Consultant Ltd. v. Rhee*, No. CV-20-08597, 2021

EVOLVE BANK & TRUST'S REPLY ISO
12(B)(7) MOTION TO DISMISS
3:24 CV-06456-TLT

1    WL 5020469, at *9 (C.D. Cal. Mar. 9, 2021); *Wilson v. Metals USA, Inc.*, No. CIV. S-12-0568,

2    2012 WL 5932990, at *3-5 (E.D. Cal. Nov. 27, 2012).  That is because a corporation and its officers

3    may retain legally cognizable interests even if their commercial operations have paused.  Here, as

4    explained, Synapse and its former executives are subject to ongoing governmental scrutiny and

5    retain a vital interest in defending against investigations and legal actions regarding the events Yotta

6    has put at issue in this lawsuit.

7        Yotta cannot change that by improperly seeking judicial notice of purported facts about

8    Synapse's financial condition, including its prospects of selling assets.  *See* Opp. 4–5.  For one,

9    most of those facts are not judicially noticeable.  Yotta may submit the fact that Synapse's

10   bankruptcy has been dismissed, but not cherrypicked statements about Synapse's financial

11   condition or commercial prospects—complex, dynamic issues that Evolve disputes.  *See Sino-US*

12   *Inv. & Mgmt.*, 2021 WL 5020469, at *3 (courts resolving Rule 12(b)(7) motions to dismiss

13   "generally may not consider materials other than facts alleged in the complaint and documents that

14   are made a part of the complaint," with narrow exception for "judicial notice of ***undisputed*** facts

15   that are contained in extrinsic materials" (emphasis added)).  Moreover, Synapse's interest in this

16   case stems chiefly from, as far as is publicly known, its ongoing defense against regulatory liability,

17   not its commercial prospects.

18       In urging a bright-line rule that non-operating entities cannot be necessary parties, Yotta

19   again mischaracterizes the cases it cites.  For example, Yotta points to *Fireman's Fund Insurance*

20   *Co. v. National Bank of Cooperatives*, 103 F.3d 888 (9th Cir. 1996), to show that non-operating

21   companies cannot be necessary parties.  But the Ninth Circuit said nothing of the sort.  Indeed,

22   *Fireman's Fund* did not even rule on "[t]he merits of [the defendant's] Rule 12(b)(7) motion."  *Id.*

23   at 896-97.  At most, it offered passing dicta on the issue, speculating that the nonparty there "does

24   not appear" to be necessary and indispensable under Rule 19 for case-specific reasons with no

25   application here.  *Id.*  Before *Fireman's Fund* commenced, the defendant had already won an

26   arbitration award against the nonparty, which had then entered court-appointed receivership.  The

27   plaintiffs, several insurance companies, sued solely for a declaration that the defendant "may not

28   enforce its arbitration award against them."  *Id.*  The Ninth Circuit suggested that the nonparty had

EVOLVE BANK & TRUST'S REPLY ISO
12(B)(7) MOTION TO DISMISS
3:24 CV-06456-TLT

3a07db13a7c8f68ce

no interest in the adjudication because the request remedy was so narrow and the nonparty's receivership status "already … enjoined" the defendant "from proceeding directly against" it. *Id.* None of that reasoning transfers to this case. And the fact that the Ninth Circuit marshaled such fact-specific considerations confirms that there is no categorical rule that non-operating entities cannot be necessary parties.

Yotta also relies on *Lone Star Industries, Inc. v. Redwine*, 757 F.2d 1544 (5th Cir. 1985). But that decision simply ruled that a nonparty that "ceased to exist as a legal entity" before the lawsuit began (and so had "disposed of virtually all of its assets") was not a required party. *Id.* at 1548. That conclusion was so obvious that all parties endorsed it. *Id.* Again, however, it has no application to this case and lends no support to Yotta's bright-line rule against joining non-operating entities. The same is true for *Stiefel & Co. v. Blitz*, 1993 WL 526386 (S.D.N.Y. Dec. 14, 1993), which ruled that a nonparty need not be joined solely because it had been "dissolved" and a named defendant had "stepped into [its] shoes" as a successor corporation. *Id.* at *2 & n.3. These rulings all concerned drastically different facts and do nothing to undercut Synapse's interest in the current lawsuit.

### B.    Joinder is Not Feasible Because It Would Destroy Diversity.

Yotta does not dispute that, accepting the FAC's allegations, joinder would destroy diversity. *See* Opp. 13.

### C.    Synapse Is Indispensable.

Evolve's Motion explained at length why Synapse is indispensable under each governing factor. Mot. 16–19. An adjudication without Synapse would be highly prejudicial, not merely to Synapse and its former executives, who could face adverse consequences in ongoing collateral proceedings, but also to Evolve, which would face an unfair risk that the jury would ascribe Synapse's wrongdoing to Evolve merely because Synapse is not a defendant. Mot. 16–18. That prejudice cannot be lessened or avoided without Synapse's joinder. Mot. 18. A judgment rendered in Synapse's absence would also be inadequate, while Yotta will have an adequate remedy in another forum—namely, the state courts it improperly sought to avoid by manufacturing diversity jurisdiction here. Mot. 18–19. Yotta offers no meaningful response to any of those arguments,

1    instead confining its mention of the governing factors to a single sentence in a footnote.  Opp. 13

2    n.6; *see Network Appliance Inc. v. Sun Microsystems Inc.*, No. C-07-06053, 2008 WL 4712604, at

3    \*1 (N.D. Cal. Oct. 22, 2008) ("arguments raised in footnotes … are not preserved" (quoting

4    *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006)).

5            In place of the relevant legal analysis, Yotta manufactures a final bright-line rule, asserting

6    that a defendant's "ability to file a third-party complaint against" a necessary nonparty "precludes

7    dismissal as a matter of law."  Opp. 13.  Yotta purports to draw that rule from *E.E.O.C. v. Peabody*

8    *West Coal Co.*, 610 F.3d 1070 (9th Cir. 2010).  But Yotta overlooks a critical distinction: *Peabody*

9    was not a case where the omission of a necessary party created diversity jurisdiction where it

10   otherwise would have been unavailable.  As a result, *Peabody* was not subject to the Supreme

11   Court's ruling that "a plaintiff" may not "defeat the statutory requirement of complete diversity by

12   the simple expedient of suing only those defendants who were of diverse citizenship and waiting

13   for them to implead nondiverse defendants."  *Owen*, 437 U.S. at 374–75.

14           The Supreme Court's ruling controls ***this*** case, however.  Yotta cannot skirt the limits on

15   diversity jurisdiction by suing only Evolve (an allegedly diverse defendant), then compelling

16   Evolve to implead non-diverse Synapse.  Yotta's allegations implicate Synapse's conduct.

17   Moreover, impleader could not fix the problem.  Federal Rule of Civil Procedure 14 authorizes a

18   "defending party" to act "as third-party plaintiff" and "serve a summons and complaint on a

19   nonparty who is or may be liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a).

20   But the problem here is not that Synapse may be liable for some of Yotta's claims against Evolve

21   (which impleader could theoretically address)—it is that Yotta is seeking factual findings that

22   Synapse committed distinct wrongdoing.  That is impermissible under Rule 19 both because it

23   would threaten Synapse with distinct liability in other actions and because, without Synapse as a

24   named party, Evolve would face a prejudicial risk that the jury would mistakenly blame it for

25   Synapse's separate wrongdoing.  Evolve could not cure any of that through impleader, since it

26   could not stand in Yotta's shoes and assert Yotta's claims against Synapse.

27           Yotta goes even further afield by citing *Travelers Property Casualty Co. of America v.*

28   *Levine*, No. 17-cv-07344, 2018 WL 3377692 (N.D. Cal. July 11, 2018).  There, it appears the Court

EVOLVE BANK & TRUST'S REPLY ISO
12(B)(7) MOTION TO DISMISS
3:24 CV-06456-TLT

was primarily correcting defendant's misunderstanding of federal civil procedure.  To the extent that Yotta tries to read *Travelers* as interpreting *Peabody* to always disfavor joinder, Yotta is wrong.  First, *Peabody* did not concern diversity jurisdiction.  This matter does.   Joinder was not available in *Peabody* because the EEOC was prohibited from lodging a claim against another federal agency or officer.   *Peabody*, 610 F.3d at 1083.   *Owen*, on the other hand, spoke directly to diversity jurisdiction and the concern that a plaintiff might manufacture diversity jurisdiction by ignoring necessary parties.  Thus, *Peabody* is entirely consistent with *Owen*.  Second, to read *Travelers* as Yotta suggests—that is, an absent party should always be brought in through Rule 14—plainly defies *Owen* and misreads *Peabody*.  The *Travelers* court never determined, at a first step, that the absent party was necessary.  Rather, it merely clarified that *if* the defendant had a separate claim against the absent party, she *could* bring it through Rule 14.  Certainly, the court did not say that even if the absent party was necessary, it could still maintain diversity by sidestepping Rule 19 altogether and instead ordering the defendant to implead the absent party, which is what Yotta suggests the Court should do here.  To read either *Travelers* or *Peabody* as Yotta does goes too far and makes them irreconcilable with *Owen*.

Here, Synapse is a necessary party and Rule 14 is not available.  Evolve is not seeking to bring its own claim against Synapse.  Rather, Evolve's motion confirms the Court's own concerns that this case cannot proceed without all necessary parties.  Yotta accused Synapse of wrongdoing.  Evolve demonstrated, and Yotta does not seriously contest, why Synapse is indispensable.  Synapse's interest is so significant that the Court will not be able to issue a final judgment without necessarily judging Synapse.   Moreover, it is fundamentally unfair for Evolve to be held accountable for Synapse's conduct when Synapse will be nothing more than an empty chair at trial.  Similarly, Yotta would have significant difficulties proving up its case, which rests on Synapse's liability, without Synapse as an actual party.  Evolve demonstrated in its motion why Synapse is not only necessary under Rule 19(a), but indispensable and must be joined if feasible under Rule 19(b) .  Mot. 15-19.  At bottom, the case cannot proceed in equity and good conscience without the party actually accused of wrongdoing.

1          **D.      The Court should not credit Yotta's irrelevant and inappropriate facts.**

2          Rather than address Evolve's arguments directly, Yotta resorts to multiple irrelevant

3    tangents.  These should be summarily ignored.  In general, when deciding on a motion to dismiss,

4    this Court has recognized that its review should be limited to the four corners of the complaint, any

5    documents incorporated into the complaint, and those facts for which it may take judicial notice.

6    Order Dismissing Complaint (Dkt. 54), at 3-4; *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th

7    Cir. 2006).  While some district courts have found a need to rely on extraneous facts in considering

8    a Rule 12(b)(7) motion, there is no need to do so here because none of Yotta's points are relevant

9    to the analysis.[3]  As Evolve explained in its motion, Rule 19 requires a three-part analysis: (1) "Is

10   the absent party ... required to be joined if feasible ... under Rule 19(a)?" (2) "If so, is it feasible to

11   order that the absent party be joined?" (3) "If joinder is not feasible, can the case proceed without

12   the absent party, or is the absent party indispensable such that the action must be dismissed?"  *Salt*

13   *River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012).

14   Rather than address these points, Yotta argues about Evolve's discovery practice, how Evolve

15   presented its Rule 19 argument, Evolve's statements about Yotta's citizenship, and third parties'

16   decisions to invoke their constitutional rights.  None of the extraneous matters concern the

17   questions at issue.

18         First, Yotta complains about how Evolve conducted discovery in the instant case,

19   particularly that Evolve did not seek discovery from Synapse.  Evolve is not suing Synapse; rather

20   it is Yotta that needs to demonstrate Synapse's liability (especially as to Yotta's conspiracy claims

21   regarding Synapse and Evolve).  Moreover, it would be a waste of resources for Evolve to duplicate

22   Yotta's third-party discovery efforts.

23         Second, Yotta appears to complain that Evolve waited too long to raise this issue.  Not only

24   is this immaterial to the analysis, it is plainly wrong as a legal and factual matter.  Joinder may be

25   raised at any time before the conclusion of trial.  "The failure to join a party required by Rule 19(b)

26

27   ───────────────
     [3] Cases that do speak to this look to information that is generally within the ambit of judicial notice.
28   It would be inappropriate for the Court to take notice of any contested facts at this stage.  *See Sino-US Inv. & Mgmt.*, 2021 WL 5020469, at *3.

EVOLVE BANK & TRUST'S REPLY ISO
                                                      12(B)(7) MOTION TO DISMISS
                                                      3:24 CV-06456-TLT

1    is an unwaivable defense that may be raised at any time before the conclusion of trial."

2    *Philadelphia Solar LLC v. Sologistics LLC*, No. 24-cv-00676-SHK, 2024 WL 5372779, at *5 (C.D.

3    Cal. Oct. 31, 2024); *see also Int'l Bus. Machs. Corp. v. Conner Peripherals, Inc.*, No. 93-cv-20591-

4    RMW, 1994 WL 409493, at *3 (N.D. Cal. Jan. 28, 1994). Yotta also misremembers the procedural

5    history. While the Court did raise the issue *sua sponte*, Evolve affirmatively stated in its original

6    motion that Yotta only brought this case against Evolve because it could not bring it against

7    Synapse. *See, e.g.*, Dkt. 27, at 2-4, 12-14. At that time, Synapse was immune from suit because it

8    was in bankruptcy. As soon as Synapse emerged from bankruptcy, Evolve brought the issue to the

9    Court's attention through the appropriate motion.

10          Third, Yotta claims that Evolve now agrees that Yotta is headquartered in California. That

11   is obviously not true. The Motion made clear that Yotta is merely *alleged* to be California-based.

12   *See* Mot. 2 ("there is no diversity of citizenship between Synapse (California) and Yotta (*allegedly*

13   *in* California)" (emphasis added)). Indeed, the Motion even anticipated a dispute about the

14   accuracy of that allegation and noted that "[i]f the Court were to find that Yotta is not a citizen of

15   California, Evolve requests the opportunity to be heard further on the issue of diversity." Mot. 15

16   n.13. Because Yotta's well-pled allegations must be credited for Rule 12(b)(7) purposes, however,

17   the Motion accepted the assertion that "Yotta and Synapse share California citizenship" and

18   explained that "their presence on opposite sides of the case would destroy diversity and rob the

19   Court of subject matter jurisdiction." Mot. 8. Yotta now quotes a snippet of that last passage out

20   of context and to misleadingly suggest that Evolve affirmatively conceded Yotta's California

21   citizenship. Opp. 15. That is false.

22          Finally, Yotta complains that two individuals invoked their Fifth Amendment rights during

23   discovery. Whether or not someone invokes their constitutional right has no bearing on the Rule

24   19 analysis, and Yotta should not try and weaponize an individual's choice to do so. Here, both

25   individuals are former Evolve employees. Evolve does not control either person, both of whom

26   were independently represented by counsel during discovery. Whatever reasons they had for

27   invoking their rights are between those individuals and their counsel and should not affect the Rule

28   19 analysis here.

1

## <u>CONCLUSION</u>

2          Evolve has demonstrated that Synapse is a necessary and indispensable party.   Yotta's

3    opposition does not directly address many of Evolve's arguments and has not persuasively shown

4    that Rule 19 does not apply.  Because Synapse is necessary and indispensable but cannot feasibly

5    be joined, the Court must dismiss this matter with prejudice.

6

7

8    Dated: January 23, 2026                                    Respectfully submitted,

9                                                                         Orrick, Herrington & Sutcliffe LLP

10

11                                                                  By: */s/ Aravind Swaminathan*
                                                                         ARAVIND SWAMINATHAN
12                                                                           Attorney for Defendant
                                                                              Evolve Bank & Trust
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EVOLVE BANK & TRUST'S REPLY ISO
12(B)(7) MOTION TO DISMISS
3:24 CV-06456-TLT